**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CORENE D. CARTER a/k/a/ CORENE BROWN,**

                                        **Plaintiff,**

                        **v.**                                    **5:10-CV-690**
                                                              **(FJS/TWD)**

**CITY OF SYRACUSE SCHOOL DISTRICT,**
**DANIEL LOWENGARD, JOHN DITTMAN,**
**JILL STEWART, JOHN DOE(S), and JANE**
**DOE(S),**

                                        **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**BOSMAN LAW OFFICE**                     **A.J. BOSMAN, ESQ.**
6599 Martin Street
Rome, New York 13440
Attorneys for Plaintiff

**FERRARA, FIORENZA, LARRISON,**          **ERIC J. WILSON, ESQ.**
**BARRETT & REITZ, P.C.**                 **MILES G. LAWLOR, ESQ.**
5010 Campuswood Drive
East Syracuse, New York 13057
Attorneys for Defendants


**SCULLIN, Senior Judge**


**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff Corene D. Carter, an employee of Defendant City of Syracuse School District

("Defendant School District") as an English teacher since 1988, asserts eighteen causes of action

against Defendants arising from their allegedly discriminatory conduct in the workplace on the

basis of her race and gender.

## II. BACKGROUND[1]

In 2007, Plaintiff sought and was granted a transfer to a high school level teaching position at Defendant School District's Institute of Technology ("Institute of Technology").  She taught ninth grade English at the Institute of Technology for the 2007-2008 school year and tenth grade English for the 2008-2009 school year.

Plaintiff alleges that her coworkers would regularly interrupt her class; and, when Plaintiff informed Defendant John Dittman, the Principal of the Institute of Technology at the time, of the interruptions, he agreed that such conduct was motivated by her race and gender but refused to take any corrective action.  *See* Proposed Amended Complaint at ¶¶ 23-24.  Plaintiff also complained to Defendant Daniel Lowengard, Defendant School District's Superintendent, about various other acts of alleged racial and gender discrimination in the workplace.

In March of 2009, Defendant Jill Stewart, Defendant School District's Coordinator of Health Careers Program, observed Plaintiff teaching a tenth grade class.  Plaintiff alleges that Defendant Stewart performed a "sham evaluation" of her performance.  *See id.* at ¶ 33.  Plaintiff

---

[1] With respect to Plaintiff's cross-motion for discovery, to the extent that the Court treats Defendants' motion as one for summary judgment, Plaintiff requests that the Court grant her the opportunity for further discovery pursuant to Federal Rule of Civil Procedure 56(f) prior to ruling on such claims.  *See* Dkt. No. 24-6 at 2.  On September 9, 2011, Defendants requested a stay of discovery pending the Court's determination of the current motions.  *See* Minute Entry dated September 9, 2011.  Magistrate Judge Lowe granted Defendants' request.  *See* Text Order dated September 28, 2011.  Given the early stage of the proceedings, the Court will treat Defendants' dispositive motion as one for judgment on the pleadings, rather than one for summary judgment. Accordingly, the Court denies Plaintiff's request for discovery as moot.  Moreover, because it is treating Defendants' motion as one for judgment on the pleadings, the Court has drawn the Background facts from Plaintiff's proposed amended complaint and documents attached thereto.

was thereafter placed on an "Assistance Plan for Improvement" ("Assistance Plan"); and, as a result, she "became ineligible to participate in such programs as 'Master Teacher', causing her a loss of income." *See id.* at ¶ 35.  Later, on April 27, 2009, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"),[2] alleging unlawful discrimination on the basis of race stemming from Defendants' issuance of the Assistance Plan.

Although Plaintiff returned to teach at the Institute of Technology at the start of the 2009-2010 school year, she soon commenced an extended leave of absence due to work-related stress from which she has not returned.  In August 2010, Plaintiff alleges that her psychiatrist authorized her to return to work, but she refused to do so because Defendant School District would only allow her to return to her formerly-held teaching position at the Institute of Technology, rather than a different teaching position at another school, as her psychiatrist had recommended.  *See id.* at ¶¶ 39-41.

Plaintiff's proposed amended complaint[3] alleges eighteen causes of action, pursuant to (1) Title VII against Defendant School District for racial discrimination; (2) the New York State Human Rights Law ("NYSHRL") against Defendants School District and Lowengard for racial and gender discrimination; (3) the NYSHRL against Defendants Dittman and Stewart for racial

---

[2] Plaintiff dually filed a charge of discrimination with the NYSDHR and the EEOC.  On September 9, 2009, at Plaintiff's request, the NYSDHR dismissed her administrative complaint so that she could pursue her claim in federal court.  *See* Proposed Amended Complaint at ¶¶ 6-7.

[3] Plaintiff filed her initial complaint on June 14, 2010.  Defendants then filed the instant motion for judgment on the pleadings on April 29, 2011.  On June 21, 2011, Plaintiff filed papers in opposition thereto, which included a motion to amend her complaint and for discovery pursuant to Rule 56(f).  For the reasons discussed below, the Court grants Plaintiff leave to file and serve her proposed amended complaint.

and gender discrimination; (4) Title VII against Defendant School District for unlawful

retaliation; (5) the NYSHRL against Defendants School District and Lowengard for unlawful

retaliation; (6) the NYSHRL against Defendants Dittman and Stewart for unlawful retaliation;

(7) 42 U.S.C. § 1983 against Defendants for subjecting Plaintiff to a hostile work environment

and discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment; (8)

42 U.S.C. § 1983 against Defendant School District for an unlawful custom, practice or policy

and a failure to train; (9) 42 U.S.C. § 1983 against Defendants for unlawful retaliation in

violation of the First Amendment and against Defendant School District for an custom, policy or

practice and for a failure to train; (10) 42 U.S.C. § 1983 against Defendant School District for an

unlawful custom, practice or policy and for discriminatory hiring, discipline, lack of promotion,

retaliation, and disparate treatment of women and minorities; (11) breach of contract; (12) 42

U.S.C. § 1981 against Defendants for subjecting Plaintiff to a hostile work environment because

of her race; (13) 42 U.S.C. § 1981 against Defendants for subjecting Plaintiff to disparate

treatment because of her race; (14) 42 U.S.C. § 1981 against Defendants for unlawful retaliation

because of her race; (15) common law tortious interference with a contractual relationship

against Defendants; (16) Title VI of the Civil Rights Act of 1964 against Defendant School

District for racial discrimination; (17) Title IX of the Education Act Amendments of 1972

against Defendant School District for gender discrimination; and (18) the Rehabilitation Act

against Defendant School District for failure to provide a reasonable accommodation.

Currently before the Court are two motions: Defendants' motion for judgment on the

pleadings or for summary judgment and Plaintiff's cross-motion to amend her complaint and for

discovery pursuant to Federal Rule of Civil Procedure ("Rule") 56(f).

### III. DISCUSSION

**A.**   **Plaintiff's cross-motion for leave to amend the complaint**

Pursuant to Rule 15(a), which governs a party's ability to amend its pleadings after responsive pleadings have been served but before trial, a court should liberally grant a party leave to amend its pleadings "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court should only deny leave to amend "for such reasons as 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'"  *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (quotation omitted).  The party opposing the requested relief has the burden of establishing that the amendment would be futile or unduly prejudicial.  *See Manigaulte v. C.W. Post of Long Island Univ.*, 659 F. Supp. 2d 367, 377 (E.D.N.Y. 2009) (citations omitted).  Where leave to amend is opposed on the grounds of futility, a court should analyze the proposed amendments under Rule 12(b)(6).  *See id.* (quotation omitted).

Here, Defendants oppose Plaintiff's motion to amend because, they argue, her amendments would be futile.[4]  Plaintiff's proposed amended complaint adds three new causes of action: (1) for violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI") (sixteenth cause of action); (2) for violations of Title IX of the Education Act Amendments

---

[4] Accordingly, the Court has analyzed the viability of Plaintiff's proposed causes of action under Rule 12(b)(6).  To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955).  The complaint must tender more than mere "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quotation omitted).  In applying this standard, the court must accept as true all allegations of fact contained in the complaint and draw all reasonable inferences in favor of the nonmoving party.  *See ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

of 1972, 20 U.S.C. § 1681 ("Title IX") (seventeenth cause of action); and (3) for violations of the Rehabilitation Act ("RA") (eighteenth cause of action), as well as several factual allegations related to these causes of action as well as the ones contained in her original complaint.

### 1. Proposed cause of action sixteen: Title VI against Defendant School District for racial discrimination

Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  In order to state an actionable claim under Title VI, a plaintiff must establish the following: "(1) the defendant received federal financial assistance, (2) the plaintiff was an intended beneficiary of the program or activity receiving the assistance, and (3) the defendant discriminated against the plaintiff on the basis of race, color, or national origin in connection with that program or activity." *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 233 (E.D.N.Y. 2010) (citations omitted); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (quotations and other citations omitted).  Furthermore, a plaintiff cannot maintain an employment discrimination claim under Title VI unless "a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3; *see Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981) (quotation omitted).

Plaintiff's proposed amended complaint alleges that Defendant School District "is a recipient of Federal funding which uses said funding to operate its programs and activities" and that she was "denied the benefits of and subjected to discrimination on account of her race by [Defendant School District]." *See* Proposed Amended Complaint at ¶¶ 103-104.  Even accepting

these allegations as true, Plaintiff has not alleged that Defendant School District was receiving federal funds in connection with any specific program or activity for which she was an "intended beneficiary" nor has she "alleged facts tending to show that any such program discriminated against her on the basis of her race in connection therewith." *Kelly v. Rice*, 375 F. Supp. 2d 203, 209 (S.D.N.Y. 2005) (citation omitted). The Court finds that this pleading deficiency is fatal to her Title VI claim. Accordingly, the Court denies Plaintiff's motion to amend her complaint to add a sixteenth cause of action under Title VI because it would be futile to bring this claim. *See id.* at 208-09 (citations omitted).

### 2. Proposed cause of action seventeen: Title IX against Defendant School District for gender discrimination

Title IX is parallel to Title VI, except that it prohibits sex discrimination, not race discrimination. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (citations omitted). The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).

"'The Second Circuit "has not ruled whether an employee of a federally-funded educational institution can use Title IX to seek redress for employment discrimination on the basis of sex.'"" *Summa v. Hofstra Univ.*, No. CV 08-0361, 2011 WL 1343058, *17 (E.D.N.Y. Apr. 7, 2011) (quotation omitted). District courts in this circuit are likewise divided on the issue. *See id.* at *18 (dismissing the plaintiff's Title IX discrimination claim because "the better argument is to limit an employee's avenue of redress to Title VII" (citations omitted)); *George v.*

*Liverpool Cent. Sch. Dist.*, No. 97-CV-1232, 2000 WL 1499342, *13 (N.D.N.Y. Sept. 29, 2000)

(agreeing "with the holdings of . . . district court decisions which have likewise declined to

entertain sex discrimination cases under Title IX where the plaintiff is an employee with recourse

under Title VII" (citations omitted)); *Urie v. Yale Univ.*, 331 F. Supp. 2d 94, 97-98 (D. Conn.

2004) (dismissing Plaintiff's private claims for employment discrimination under Title IX

because "Title IX was not intended to enable employees of educational institutions complaining

of gender discrimination to bypass the remedial scheme Congress established in Title VII"

(citations omitted)).  *But see Kohlhausen v. SUNY Rockland Cmty. Coll.*, No. 7:10-CV-3168,

2011 WL 1404934, *9 (S.D.N.Y. Feb. 9, 2011) (holding that "Title IX provides a private right of

action against gender discrimination to employees of federally-funded educational institutions,

and . . . this Title IX right of action is not preempted although a remedy under Title VII is also

available").

 The weight of authority in this circuit outside of the Southern District supports a finding

that Title VII provides the exclusive means under which a plaintiff may recover for employment

discrimination on the basis of sex.  Accordingly, the Court denies Plaintiff's motion to amend

insofar as she seeks to add a seventeenth cause of action pursuant to Title IX because it would be

futile to do so.

### 3. Proposed cause of action eighteen: Rehabilitation Act against Defendant School District for failure to provide a reasonable accommodation[5]

The RA prohibits discrimination on the basis of disability in any program or institution that receives federal financial assistance. *See* 29 U.S.C. § 794. To establish a prima facie case of disability discrimination premised on an employer's failure to accommodate, a plaintiff must show that (1) she is an individual with a disability within the meaning of the RA; (2) her employer had notice of the disability; (3) she could perform the essential functions of the job sought with reasonable accommodation; and (4) her employer failed to make such accommodation. *See Stone v. City of Mount Vernon*, 118 F.3d 92, 96-97 (2d Cir. 1997) (citation omitted). Courts analyze claims of discrimination under the RA according to the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and the plaintiff bears the initial burden of establishing a prima facie case. *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (citation omitted). Thus, to be entitled to the protections of the RA, the plaintiff must qualify as "disabled" under the statute.[6]

---

[5] In the papers she submitted in support of her motion to amend, Plaintiff refers to her eighteenth cause of action as one for disability discrimination pursuant to the RA. *See* Dkt. No. 24-1 at ¶ 8. Plaintiff's proposed amended complaint only refers to Defendant School District's failure to provide a reasonable accommodation. *See* Proposed Amended Complaint at ¶¶ 109-113. Resolving all ambiguities in Plaintiff's favor, the Court construes this proposed cause of action as a failure to accommodate claim under the RA.

[6] The ADA Amendments Act (the "ADAAA") of 2008, effective as of January 1, 2009, broadened the definition of a disability under the ADA and, by express inclusion, the RA. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325 (2008). Here, the ADAAA applies to the Court's analysis of Plaintiff's proposed RA claim because Defendants' allegedly discriminatory conduct occurred after January 1, 2009, the effective date of the ADAAA. *See Rumbin v. Ass'n of Am. Med. Colls.*, 803 F. Supp. 2d 83, 92 n.4 (D. Conn. 2011). The ADAAA substantially broadened the definition of "disability" under the ADA. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325 (2008). Among other things, it provides a more expansive interpretation of

(continued...)

The RA defines "disability" by reference to the Americans with Disabilities Act ("ADA"), *see* 29 U.S.C. §§ 705(20)(B), 794(d), and the standards for maintaining an employment discrimination claim under the RA are "effectively the same" as those under the ADA. *See Civic Ass'n of Deaf of New York City, Inc. v. City of New York*, No. 95 Civ. 8591, 2011 WL 5995182, *10 (S.D.N.Y. Nov. 29, 2011) (citation omitted). Accordingly, references herein to the ADA should be read to include the RA. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;" "(B) a record of such an impairment;" or "(C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1).

Here, Plaintiff apparently alleges that her work-related stress condition renders her "actually disabled" within the meaning of the RA, which would require her to establish that (1) she suffers from a physical or mental impairment; (2) the impairment affects a major life activity; and (3) the impairment substantially limits that major life activity. *See Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002) (citing [*Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998)], *superseded by statute on other grounds by* 42 U.S.C. § 12102(3)(A)) (other citation omitted).

Plaintiff alleges that her "work related stress condition renders her disabled within the meaning of the [RA]," that "she can perform the essential functions of the job with a reasonable accommodation," and that she "requested and was denied a reasonable accommodation." *See*

------

[6](...continued)
the term "substantially limited" so as to expand the class of individuals entitled to protection under the ADA. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325 (2008). Unlike the former standards for interpreting ADA claims, the ADAAA rejects an interpretation of "substantially limited" to mean "significantly restricted." *See id.*

Proposed Amended Complaint at ¶¶ 110-112.  Plaintiff further asserts that she "began treatment with a psychiatrist and was placed on medication for work related stress" and that she "was taken out of work by her treating psychiatrist on or about October 26, 2009 due to work related stress."  *See id.* at ¶¶ 35, 39.  On August 24, 2010, following an extended absence from work, Plaintiff alleges that her psychiatrist "authorized" her to return to work; yet, he recommended that Defendants transfer her to a school other than the Institute of Technology.  *See id.* at ¶ 40.  She alleges that "Defendants refused [her] doctor's requested accommodation and, to date, she has not been returned to work."  *See id.* at ¶ 41.  In essence, Plaintiff alleges that Defendants have denied her request for reasonable accommodation in the form of reassignment to another position away from the school and staff that allegedly caused her disability.

Plaintiff's allegations fail to even suggest that her work-related stress condition limited or impaired — substantially or otherwise — her ability to engage in any major life activity.  Plaintiff's bare and conclusory allegation that her "work related stress condition renders her disabled" is insufficient to meet the pleading requirements discussed above.  Accordingly, even under the ADAAA's substantially-broadened definition of disability, *see* ADA Amendments Act of 2008, Pub. L. No. 110-325 (2008), the Court finds that Plaintiff has failed to allege facts tending to show that she was or is disabled within the meaning of the RA.  *See Cusack v. Delphi Corp.*, 686 F. Supp. 2d 254, 257-58 (W.D.N.Y. 2010) (citation omitted); *Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp. 2d 418, 424-25 (S.D.N.Y. 2008) (citations omitted).  Thus, the Court denies Plaintiff's motion to amend insofar as she seeks to add an eighteenth cause of action

pursuant to the RA because it would be futile to do so.[7]

In sum, therefore, the Court denies Plaintiff's motion to amend with respect to her sixteenth (Title VI), seventeenth (Title IX), and eighteenth (RA) causes of action because it would be futile to bring these claims.  However, given the early stage of this litigation and the fact that neither bad faith nor undue prejudice has been shown, the Court grants Plaintiff leave to amend her complaint in all other respects.

## B.    Defendants' motion for judgment on the pleadings[8]

Viewed in the light most favorable to the nonmoving party, "[j]udgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."  *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted); *see also Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994) (quotation and other citation omitted).  Courts apply the "same standard as that applicable to a motion under Rule 12(b)(6)" and thus "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant . . . ."  *Sheppard*

---

[7] Even if the Court were to find that Plaintiff qualifies as disabled at this stage, which it does not, Plaintiff has insufficiently alleged that her request for a reasonable accommodation in the form of job relocation was reasonable.  As such, the Court could deny Plaintiff's motion to amend her complaint to add this claim on this ground as well.  *See Theilig v. United Tech Corp.*, 415 Fed. Appx. 331, 333 (2d Cir. 2011).  Finally, because the Court finds that Plaintiff has insufficiently alleged that she is disabled, it need not address the other prima facie elements of a claim under the RA.

[8] Defendants' papers in support of their dispositive motion divide Plaintiff's causes of action into six groups: disparate treatment claims; retaliation claims; hostile work environment claims; custom, practice, or policy claims; 42 U.S.C. § 1983 claims; and breach-of-contract claims.  *See* Dkt. No. 17-3.  Many of Defendants' arguments apply to multiple claims.  The Court has grouped Plaintiff's claims differently.

*v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994) (citations omitted).  Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  This pleading standard does not require "detailed factual allegations," but it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555 (2007) (citation omitted).  Finally, in deciding a motion for judgment on the pleadings, a court may consider the pleadings, documents attached thereto as exhibits, documents incorporated by reference, documents that are integral to the complaint, and matters upon which the court may take judicial notice.  *See Holland v. City of New York*, No. 10 Civ. 2525, 2011 WL 6306727, *3 (S.D.N.Y. Dec. 16, 2011) (quotations and other citations omitted).

### 1. Notice-of-claim requirements

New York Education Law § 3813 provides that a plaintiff must comply with certain notice-of-claim requirements prior to bringing suit against a school district.  *See* N.Y. Educ. Law § 3813(1) & (2); *see Saunders v. NYC Dep't of Educ.*, No. 07 CV 2725, 2010 WL 2816321, *22 (E.D.N.Y. July 15, 2010) (quotation and other citations omitted).  New York Education Law § 3813(1) applies to Plaintiff's NYSHRL and breach-of-contract claims and § 3813(2) applies to her state-law tort claim.  *See, e.g.*, *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 366-68 (W.D.N.Y. 2010).

Section 3813(1)'s notice-of-claim requirements apply to those claims brought against Defendant School District and its officers.  *See Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 127 (W.D.N.Y. 2010) (citation omitted).  Defendant Lowengard is covered

by § 3813(1) as a "school officer" because he was the District Superintendent. *See* N.Y. Educ. Law § 2(13). Defendants Dittman and Stewart, however, who were at all relevant times the Institute of Technology's Principal and its Health Careers Program Coordinator, respectively, are not "officers" within the scope of § 3813(1). *See Lewinter v. New York City Dep't of Educ.*, No. 09 Civ. 0227, 2010 WL 2746334, *7 n.3 (S.D.N.Y. July 9, 2010) (citations omitted); *Carlson*, 679 F. Supp. 2d at 367 (citations omitted). Accordingly, the Court finds that Plaintiff was required to comply with § 3813(1)'s notice-of-claim requirements with regard to her NYSHRL claims against Defendant School District and Defendant Lowengard (second and fifth) but not as against Defendants Dittman and Stewart (third and sixth).[9]

On November 23, 2009, Plaintiff's attorney mailed copies of her notice of claim to the individual Defendants. *See* Proposed Amended Complaint at ¶ 9; Dkt. No. 24-5 at ¶ 29; Dkt. No. 17-1, Exh. "C" attached thereto. Plaintiff's attorney also apparently mailed a copy of the notice of claim to Defendant Lowengard "for service upon the City of Syracuse School District[.]" *See* Dkt. No. 24-5, at ¶ 31. Plaintiff concedes in her response papers that she did not submit a notice of claim to the Board of Education as required, but she argues that service on Defendant Lowengard should constitute sufficient notice in compliance with § 3813(1). *See* Dkt. No. 24-6 at 18. To the contrary, § 3813(1) is a statutory prerequisite mandating service on the proper governing body, i.e., the Board of Education. *See Brtalik v. South Huntington Union Free Sch. Dist.*, No. CV-10-0010, 2010 WL 3958430, *4 (E.D.N.Y. Oct. 6, 2010) (quotation and other

_____

[9] However, the Court dismisses Plaintiff's third cause of action under the NYSHRL insofar as she alleges gender discrimination because she failed to mention her gender or sex in her administrative complaint, and, thus, provided no notice of a possible discrimination claim on the basis of her gender.

citations omitted).  Therefore, the Court finds that Plaintiff's failure to serve a notice of claim on the appropriate governing body is fatal to her second and fifth NYSHRL claims.  *See Avgerinos*, 690 F. Supp. 2d at 127-28 (citation and footnote omitted); *Carlson*, 679 F. Supp. 2d at 368 (quotation omitted).

Accordingly, the Court dismisses Plaintiff's second and fifth causes of action against Defendants School District and Lowengard but denies Defendants' motion for judgment on the pleadings on this basis with regard to Plaintiff's third and sixth causes of action under the NYSHRL against Defendants Dittman and Stewart.[10]

As stated, § 3813(2) provides that state-law tort claims against a school district and its employees are subject to certain notice-of-claim requirements.  *See* N.Y. Educ. Law § 3813(2). Among other things, such claims must comply with New York General Municipal Law § 50-e, which requires a plaintiff to prepare and serve "a written, sworn claim, describing the nature of the claim, the time and date the claim arose, and the items of damage or injuries sustained" within ninety days after the claim arises.  *See Avgerinos*, 690 F. Supp. 2d at 128 (quotation and other citation omitted).  In the instant case, Plaintiff asserts a state-law tortious-interference-with-contract (fifteenth) claim.  Neither Plaintiff's notice of claim nor her EEOC complaint included any mention of this claim; and, thus, the Court grants Defendants' motion and dismisses Plaintiff's fifteenth cause of action because she failed to include any factual allegations sufficient to enable Defendants to investigate this claim.  *See Meyer v. William Floyd Union. Free Sch. Dist.*, No. 07-CV-2524, 2008 WL 4415271, *8 (E.D.N.Y. Sept 24, 2008) (quotation omitted);

---

[10] The Court notes that, although it is allowing these claims to go forward, Plaintiff's factual allegations barely satisfy Rule 12(b)(6)'s pleading requirements.

-15-

*Avgerinos*, 690 F. Supp. 2d at 129 (citations omitted).

Finally, Plaintiff failed to provide any notice regarding her state-law breach-of-contract (eleventh) claim.  Likewise, for the above-stated reasons, the Court dismisses Plaintiff's eleventh cause of action for breach of contract because she failed to comply with the notice-of-claim requirements of § 3813(1).[11]  *See Lewinter*, 2010 WL 2746334, at *3 (quotation omitted); N.Y. Educ. Law § 3813(1).

### 2. Administrative exhaustion of Plaintiff's Title VII claims

Plaintiff's proposed amended complaint asserts claims for racial discrimination (first) and retaliation (fourth) under Title VII.  Before commencing a Title VII action in a federal district court, a plaintiff must first exhaust her available administrative remedies by filing a charge with the EEOC or corresponding state agency, i.e., the NYSDHR.  *See Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citation omitted).  Even if a particular claim is not included in an administrative complaint, the court may nonetheless allow that claim to go forward if it is "'reasonably related'" to those claims specifically identified in the administrative complaint.  *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds* (citations omitted).

_____

[11] Although Plaintiff does not identify against whom she is asserting her breach-of-contract claim, Defendant School District is the only possible defendant for this claim.  It is also unclear what act or acts allegedly amounted to an actionable breach and whether Plaintiff was or is a member of a union or other collective bargaining agreement with Defendant School District. If Plaintiff was a member of a collective bargaining unit, which is likely given her employment status, the Court could dismiss this claim on that ground as well. *See DiFillippo v. Special Metals Corp.*, No. 6:09-CV-760, 2011 WL 4595204, *16 (N.D.N.Y. Sept. 30, 2011) (dismissing the plaintiff's breach-of-contract claim because she was a member of a collective bargaining unit and had a grievance procedure for addressing alleged violations of the agreement).

Here, Plaintiff filed her administrative complaint with the EEOC on April 27, 2009, alleging racial discrimination stemming from the Assistance Plan that Defendants imposed on her.  Plaintiff did not specifically allege, as she does in the instant case, unlawful retaliation.[12] *See* Dkt. No. 17, Exh. "G" attached thereto.  The question before the Court, then, is whether Plaintiff's administratively exhausted allegations of race discrimination provided sufficient notice of her retaliation claim for the Court to allow it to go forward.

A plaintiff is not barred from raising unexhausted claims that (1) "would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; (2) "alleg[e] retaliation by an employer against an employee for filing an EEOC charge"; or (3) "allege[] further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  *Butts*, 990 F.2d at 1402-03 (quotation and other citations omitted).  The Court will allow Plaintiff's Title VII retaliation claim to go forward because she alleges that she "was subjected to additional discrimination and was retaliated against" for filing her EEOC complaint, *see* Proposed Amended Complaint at ¶¶ 49-50; and, further, her claim for retaliation is reasonably related to the allegations contained in her administrative complaint as this claim would likely fall within the scope of the EEOC investigation which can reasonably be expected to grow out of her EEOC complaint alleging various acts of race discrimination.  *See Cooper v. Sutherland Group, Ltd.*, No. 10-CV-6575, 2011 WL 1118712, *2 (W.D.N.Y. Mar. 24, 2011) (citing *Butts*, 990 F.2d at 1402-1403 (2d Cir. 1993)).

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's Title VII claims

---

[12] In two letters dated May 20, 2009, and May 28, 2009, Plaintiff sent substantiated factual allegations of racial discrimination to the NYSDHR.  *See* Dkt. No. 24-3.  Again, however, Plaintiff did not specifically reference unlawful retaliation.  *See id.*

-17-

(first and fourth) on the ground that she failed to exhaust her administrative remedies.

### 3. Title VII (first and fourth) and NYSHRL (third and sixth) claims[13]

#### a. First cause of action: Title VII racial discrimination claim against Defendant School District

Courts analyze Title VII claims for discrimination and retaliation under the three-step

burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*See Ruiz*, 609 F.3d at 491 (citation omitted).  Plaintiff must first establish a prima facie case of

employment discrimination; and, to do so, she must show that (1) she is a member of a protected

class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and

(4) the adverse employment action occurred under circumstances giving rise to an inference of

discrimination based on her membership in a protected class.[14]  *See id.* at 492 (citation omitted);

*see also Croswell v. Triborough Bridge & Tunnel Auth.*, No. 03 Civ. 2990, 2007 WL 2274252,

*6 (S.D.N.Y.  Aug. 7, 2007) (citation omitted).

Defendants contend that the Court should dismiss this claim because Plaintiff has not

suffered any adverse employment action.  The standard of proof for this third prima facie element

is higher for an intentional discrimination claim than for a retaliation claim.  *See Croswell*, 2007

WL 2274252, at *7.  "An adverse employment action in the intentional discrimination context is

---

[13] The Court will treat Plaintiff's Title VII and NYSHRL claims together because they are analytically identical and require proof of the same common elements.  *See Lawson v. New York City Bd. of Educ.*, No. 05 Civ. 825, 2011 WL 869282, *16 (S.D.N.Y. Feb. 25, 2011) (citations omitted).

[14] The Court will apply this same burden-shifting analysis applicable to Plaintiff's Title VII claims to her claims under the NYSHRL and 42 U.S.C. § 1983.  *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (citation omitted).

a 'materially adverse change in the terms and conditions of employment [that] is more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *DeMoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (quoting *Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d Cir. 2005)). The plaintiff must have suffered a significant change in the context of her employment; everyday grievances, disappointments, and setbacks do not suffice. *See Cunningham v. New York State Dep't of Labor*, 326 Fed. Appx. 617, 619 (2d Cir. 2009) (citation omitted).

Plaintiff alleges the following in this regard: her "teaching responsibilities for all but five or six students [from her class] were taken from her"; by placing her on an Assistance Plan, Defendants caused her to lose potential income because it rendered her ineligible to participate in such programs as "Master Teacher"; she was subjected to unjustified intense scrutiny and criticism of her work while white teachers were not similarly scrutinized nor criticized; and that, although a faculty member's request for transfer was typically honored, Defendants denied her request for transfer. *See* Proposed Amended Complaint at ¶¶ 27, 35, 38, 41, 46-47.

"A negative job evaluation is not itself an adverse employment action." *Altieri v. Albany Pub. Library*, No. 1:05CV126, 2005 WL 1388905, *3 (N.D.N.Y. June 8, 2005) (citations omitted); *see also Waters v. Gen. Bd. of Global Ministries*, 769 F. Supp. 2d 545, 558 (S.D.N.Y. 2011) (holding that "the issuance of a performance plan and the recommendation that [the plaintiff] attend . . . counseling sessions do not constitute adverse employment actions" (citations omitted)). Plaintiff's cursory allegation that Defendants impacted the terms and conditions of her employment by placing her on an Assistance Plan fails to set forth any factual basis to support such an inference as she has not demonstrated a tangible, adverse action. For that reason, the

Court grants Defendants' motion for judgment on the pleadings with regard to Plaintiff's first

cause of action for employment discrimination under Title VII.

### b. Fourth cause of action: Title VII retaliation against Defendant School District

To make out a prima facie case of retaliation under Title VII, Plaintiff must demonstrate

that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) her

employer took adverse action against her; and (4) a causal connection exists between the

protected activity and the adverse action.  *See Croswell*, 2007 WL 2274252, at *7 (citation

omitted).

For the above-stated reasons, because the Court finds that Plaintiff's proposed amended

complaint fails to sufficiently to allege that Defendants took an adverse employment action

against her, the Court grants Defendants' motion for judgment on the pleadings with regard to

Plaintiff's fourth cause of action for retaliation under Title VII.[15]

---

[15] Furthermore, Plaintiff does not clearly allege any specific retaliatory action by Defendants nor a causal connection between the protected activity and the purported retaliatory action.  The closest Plaintiff comes to doing so is by alleging that, after she filed her administrative complaint with the EEOC on April 27, 2009, she "was subjected to additional discrimination and retaliated against for her complaint and protest of the Defendants' discriminatory acts and practices" and Defendants Dittman and Stewart "escalated their efforts to be critical of and find fault with [her] work performance . . . . [and] elevated the level of hostility and tension" at work.  *See* Proposed Amended Complaint at ¶¶ 49-50.  These conclusory allegations fail plausibly to indicate any causal connection, either directly or indirectly, between the protected activity and the allegedly adverse employment action; and, as such, the Court finds that Plaintiff's Title VII retaliation claim warrants dismissal on this ground as well.

### c. NYSHRL racial discrimination claim against Defendants Dittman and Stewart (third) and NYSHRL retaliation claim against Defendants Dittman and Stewart (sixth)

In order to bring a claim against an individual defendant under the NYSHRL, "a plaintiff must either show direct, personal involvement in discriminatory conduct, or that the defendant 'aided and abetted' the discrimination or retaliation at issue." *Zambrano-Lamhaouhi v. New York City Bd. of Educ.*, No. 08-CV-3140, 2011 WL 5856409, *10 (E.D.N.Y. Nov. 21, 2011) (citation omitted).

In her third cause of action, Plaintiff alleges that Defendants Dittman and Stewart violated her right to be free from racial (and gender) discrimination under the NYSHRL. *See* Proposed Amended Complaint at ¶ 61. In support of this claim, she alleges that her coworkers would regularly interrupt her class and that Defendant Dittman "agreed" that this conduct was motivated by her race and gender; Defendant Dittman "passed her over for an advanced English class and gave the assignment to one of Plaintiff's White co-workers who had no teaching credentials"; Defendant Stewart "deliberately selected a date that students were completing year end projects [to conduct Plaintiff's performance evaluation] because she wanted to find fault with Plaintiff" and "performed a sham evaluation"; Defendants Dittman and Stewart "targeted Plaintiff and intensely scrutinized her work performance and conduct," "monitored Plaintiff intensely and unfairly found fault with her job performance," and "mocked Plaintiff for matters pertaining to her personal life," all of which they did not similarly do to white and/or male teachers; Defendants Dittman and Stewart gave Plaintiff "unsatisfactory performance evaluations" and directed her "to participate in an unwarranted and discriminatory [Assistance Plan]," which they did not similarly do to white and/or male teachers. *See id.* at ¶¶ 15-16, 24, 26, 33, 46-48.

-21-

Taking these allegations together, the Court finds that Plaintiff alleges barely enough non-conclusory facts, which, if true, tend to show that Defendants Dittman and Stewart were personally involved in, or aided and abetted, discriminatory conduct against Plaintiff on the basis of her race. Accordingly, the Court denies Defendants' motion for judgment on the pleadings with regard to Plaintiff's third cause of action insofar as she alleges racial discrimination.

Turning now to Plaintiff's sixth cause of action, she alleges that Defendants Dittman and Stewart retaliated against her for opposing discrimination in violation of the NYSHRL. *See id.* at ¶ 70. In support of this claim, Plaintiff alleges that, after she filed her administrative complaint with the EEOC, Defendants Dittman and Stewart "continued to, and in fact, escalated their efforts to be critical of and find fault with the Plaintiff's work performance" and "elevated the level of hostility and tension in Plaintiff's work environment and have made Plaintiff's work environment virtually intolerable . . . ." *See id.* at ¶¶ 49-50. The Court finds that Plaintiff has not alleged facts that make out a plausible retaliation claim against Defendants Dittman or Stewart because she does not even indicate that they were personally involved in, or that they aided and abetted, unlawful retaliation. As such, the Court grants Defendants' motion on this ground and dismisses Plaintiff's sixth cause of action.

Therefore, the Court denies Defendants' motion for judgment on the pleadings with regard to Plaintiff's third cause of action for racial discrimination under the NYSHRL but grants Defendants' motion as to Plaintiff's sixth cause of action for retaliation under the NYSHRL and dismisses that claim.

#### 4. 42 U.S.C. § 1983 (seventh, eighth, ninth, and tenth) claims[16]

##### a. Seventh cause of action: 42 U.S.C. § 1983 hostile work environment and discrimination claims against Defendants Lowengard, Dittman, and Stewart in their individual capacities[17]

Plaintiff asserts her § 1983 claims against the individual Defendants and the municipal Defendant.  As for her claims against the individuals in their individual capacities, she must show that (1) the individual was acting under color of state law and that (2) his or her conduct deprived the plaintiff of a constitutional or federal statutory right.  *See Washington v. Cnty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004) (citation omitted).  Plaintiff must further establish the individual's "personal involvement in the discrimination at issue; there is no respondeat superior liability."  *Zambrano-Lamhaouhi*, 2011 WL 5856409, at *10 (citation omitted); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (setting forth several ways to show "personal involvement" under § 1983 (quotation omitted)).

To prevail on a hostile work environment claim under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff must show that her "'workplace is permeated with

---

[16] Plaintiff asserts her seventh, eighth, and ninth causes of action against Defendant School District and Defendants Lowengard, Dittman, and Stewart in their individual and official capacities.  The Court dismisses these claims against Defendants Lowengard, Dittman, and Stewart in their official capacities as duplicative of these same claims against Defendant School District.  *See Zachary v. Clinton Cnty., N.Y.*, No. 1:01CV1281, 2003 WL 24197685, *2 (N.D.N.Y. Jan. 10, 2003) (holding that "[c]laims against individual defendants in their official capacities 'are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant'" (quotation omitted)); *Miller v. City of Ithaca*, No. 3:10-cv-597, 2010 WL 3809842, *9 (N.D.N.Y. Sept. 22, 2010) (quotation omitted).

[17] Plaintiff combines her seventh and eighth causes of action, and these claims are partially overlapping.  The Court construes Plaintiff's seventh cause of action as against Defendants Lowengard, Dittman, and Stewart in their individual capacities only and her eighth cause of action as against Defendant School District only.

discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ronga v. New York City Dep't of Educ.*, No. 10 Civ. 03327, 2011 WL 1327026, *5 (S.D.N.Y. Mar. 31, 2011) (quotation omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citations omitted). Plaintiff bases her hostile work environment claim on the same conduct that she alleges in support of her Title VII and NYSHRL claims.[18]

In order to demonstrate that Defendant Lowengard — the alleged policymaking official in his capacity as Superintendent — was personally involved in the discrimination at issue, Plaintiff alleges that, after she had complained to Defendant Lowengard about allegedly discriminatory treatment, "instead of taking [her] concerns seriously, he complained to her that she was 'hard to get along with' and was not a 'team player.'" *See id.* at ¶ 32. She further alleges that Defendant Lowengard "personally participated in the discriminatory and/or retaliatory acts alleged herein" and that he was "deliberately indifferent" thereto. *See id.* at ¶¶ 13, 51. The Court finds that Plaintiff has alleged insufficient facts to show that Defendant Lowengard personally participated in the creation or maintenance of a hostile work environment. With regard to Defendants

---

[18] Additional allegations include the following: her coworkers "would regularly make racially disparaging comments to or regarding students," which were later reported to her, including one coworker telling his students "that then Presidential candidate Barack Obama would never be President because he is Black"; white coworkers "complained that [her] vehicle . . . was a 'drug dealers car'"; "numerous students reported to her that they were questioned about her by the school administration and were invited to complain"; after she complained about alleged acts of discrimination in the workplace, she was told "that the adverse treatment was due to her race and gender"; and, while she was away from work due to her work-related stress, "Defendants escalated their efforts to harm Plaintiff by constantly contacting her home knowing that she was out ill and sending her certified mail to her residence." *See* Proposed Amended Complaint at ¶¶ 25, 28-32, 34, 37.

Dittman and Stewart in their individual capacities, however, the Court finds that Plaintiff sufficiently alleges, *see id.* at ¶¶ 15-16, 24, 26, 33, 46-48, that these individuals personally participated in the creation and/or maintenance of a hostile work environment on the basis of her race and gender. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation and other citations omitted).

Accordingly, the Court denies Defendants' motion for judgment on the pleadings with regard to Plaintiff's seventh cause of action under § 1983 insofar as she alleges a hostile work environment against Defendants Dittman and Stewart in their individual capacities but grants Defendants' motion without prejudice with regard to Defendant Lowengard in his individual capacity.[19]

As for Plaintiff's § 1983 discrimination claim against Defendants Lowengard, Dittman, and Stewart in their individual capacities, to prevail on this claim, she must show that (1) she was treated differently than similarly situated individuals and that (2) this differential treatment was based on impermissible considerations such as race or gender. *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (quotation omitted). For the reasons discussed above, at this stage of the proceedings, the Court finds that Plaintiff has sufficiently alleged that she was discriminated against on the basis of her race and gender and that Defendants Dittman and Stewart, but not Defendant Lowengard, were personally involved in the alleged discriminatory treatment. Accordingly, as with her hostile work environment claim, the Court denies Defendants' motion for judgment on the pleadings with regard to Plaintiff's seventh cause

---

[19] The Court dismisses this claim as against Defendant Lowengard without prejudice, allowing Plaintiff leave to amend to include specific factual allegations, if any, regarding Defendant Lowengard's personal involvement in the creation of a hostile work environment.

of action under § 1983 insofar as she alleges racial and gender discrimination against Defendants

Dittman and Stewart in their individual capacities but grants Defendants' motion without

prejudice with regard to Defendant Lowengard in his individual capacity.

> **b. Eighth cause of action: 42 U.S.C. § 1983 hostile work environment and discrimination claims based on a discriminatory custom, practice or policy and failure to train against Defendant School District**

In order to recover under 42 U.S.C. § 1983 against a municipal defendant, the plaintiff

must show that the alleged constitutional violation resulted from a municipal policy or custom.

*See Davis v. City of New York*, 75 Fed. Appx. 827, 829 (2d Cir. 2003) (citations omitted).  To do

so, the plaintiff must show one of the following:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006) (citation omitted), *aff'd*, 232 Fed. Appx. 26 (2d Cir. 2007).

To establish municipal liability premised on an unlawful custom, practice, or policy in

violation of 42 U.S.C. § 1983, "'the Second Circuit has held that "the mere assertion . . . that a

municipality has such a custom or policy is insufficient in the absence of allegations of fact

tending to support, at least circumstantially, such an inference."'"  *Coleman v. City of Syracuse*,

No. 5:09-CV-1391, 2011 WL 13808, *8 (N.D.N.Y. Jan. 4, 2011) (quotation and other citations

omitted).  The plaintiff must, instead, allege facts tending to show actual conduct by a municipal policymaker.  *See id.* (quotation omitted).

In this case, Plaintiff alleges that "the actions and omissions as aforementioned [in the proposed amended complaint] constitute unlawful municipal custom, practice or policy since they are the actions and omissions of policy making officials of [Defendant School District]"; and, further, Defendant School District "created, maintained and/or fostered a custom, policy or practice of intimidation and discrimination thereby causing Plaintiff injury and harm."  *See* Proposed Amended Complaint at ¶ 74.  Plaintiff alleges that Defendant Lowengard "is responsible for . . . the training, supervision, discipline and conduct of the other named Defendants" and "for enforcing the rules and regulations of" Defendant School District and that he "had authority and control over the other named individual Defendants."  *See id.* at ¶ 13.

Even construed in the light most favorable to Plaintiff, there are no factual allegations tending to show the existence of a discriminatory custom, practice, or policy of Defendant School District, and the mere assertion that such a custom or policy exists is insufficient to survive Defendants' motion.  *See Coleman*, 2011 WL 13808, at *8 (quotation and other citations omitted); *Simms v. City of New York*, No. 10 CV 3420, 2011 WL 4344215, *2 (E.D.N.Y. May 19, 2011) (quotation and other citations omitted).  Accordingly, the Court grants Defendants' motion for judgment on the pleadings as to Plaintiff's eighth cause of action without prejudice insofar as she alleges a custom, practice, or policy of a hostile work environment and discrimination against Defendant School District.

Plaintiff also asserts a § 1983 failure to train claim against Defendant School District.[20] To establish municipal liability based on a failure to train, a plaintiff must show the municipal defendant's "'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 631 (E.D.N.Y. 2011) (quotation omitted).  This is a stringent standard to meet.  *See id.* (quotation omitted).  The municipality must have been "'the "moving force" behind the alleged injury.'"  *Id.* (quotation omitted).  Furthermore, "'[a] pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.'"  *Id.* (quotation and footnote omitted).  Accordingly, in this case, Plaintiff bears the difficult burden of showing that (1) a final policymaker for Defendant School District was deliberately indifferent to the need to train teachers and other employees and (2) that lack of training actually caused the alleged Equal Protection violation.  *See id.* (quotation omitted).

Plaintiff alleges that Defendant School District "failed to adequately train or discipline employees and supervisors on the rights of employees to be free from hostile work environment, discrimination, and/or retaliation."  *See* Proposed Amended Complaint at ¶ 74.  The Court finds that Plaintiff has not set forth any non-conclusory allegations tending to show, circumstantially or otherwise, "deliberate indifference" on the part of Defendant School District; and, thus, the Court dismisses this claim.

For all of these reasons, the Court grants Defendants' motion for judgment on the

---

[20] This claim is not unrelated to Plaintiff's policy, custom, or practice claim in that "[a] policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'"" *Valenti v. Massapequa Union Free Sch. Dist.*, No. 09-CV-977, 2010 WL 475203, *7 (E.D.N.Y. Feb. 5, 2010) (quotation omitted).

pleadings without prejudice as to Plaintiff's eighth cause of action insofar as she alleges a

custom, practice, or policy of a hostile work environment and discrimination against Defendant

School District and grants Defendants' motion with prejudice insofar as she alleges

discriminatory conduct based on a failure to train.

### c. Ninth cause of action: 42 U.S.C. § 1983 First Amendment retaliation claim against Defendants and custom, practice or policy and failure to train claims against Defendant School District

A public employee asserting a First Amendment retaliation claim under § 1983 """must

advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was

protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a

causal connection between the protected speech and the adverse action.""" *Negron v. City of New

York*, No. 10 CV 2757, 2011 WL 4737068, *16 (E.D.N.Y. Sept. 14, 2011) (quotation and other

citations omitted).  For a public employee's speech to be protected, she must have spoken "as a

citizen upon matters of public concern," rather than "as an employee upon matters only of

personal interest . . . ."  *Connick v. Myers*, 461 U.S. 138, 147 (1983) (citation omitted).

In this case, Plaintiff apparently contends that Defendants' issuance of an Assistance Plan

violated her First Amendment rights because it was issued in retaliation for an act that, she

argues, was protected by the First Amendment as it involved a matter of public concern —

namely, her administrative complaint (as well as her substantiated allegations on the matter) —

whereas Defendants contend that Plaintiff has not shown that she had spoken on any matter of

public concern and that no retaliatory action was taken against her.  Plaintiff alleges that she

"complained of race discrimination in public education, which . . . is a matter of public concern"

and that, "[a]side from herself, Plaintiff complained of discriminatory treatment of African-American students and include [stet] her supplemental submissions to the [NYSDHR] dated May 20 and 28, 2009."  *See* Proposed Amended Complaint at ¶ 44.

"A public employee's speech may be constitutionally protected only if the plaintiff has spoken out as a citizen, not as an employee, on matters of public concern, rather than on matters of personal interest, and the state lacks an adequate justification for treating the employee differently from any other member of the general public."  *Miller v. City of Ithaca*, No. 3:10-cv-597, 2010 WL 3809842, *10 (N.D.N.Y. Sept. 22, 2010) (citations omitted).  This determination is a question of law for the Court to decide.  *See id.* (quotation omitted).  The Court finds that Plaintiff's administrative complaint sought to address her own personal grievance with Defendants regarding their alleged racially discriminatory conduct against her, rather than a matter of public concern, because her complaints "were motivated by and dealt with her individual employment situation."  *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) (citation omitted); *see Bates v. Bigger*, 56 Fed. Appx. 527, 530 (2d Cir. 2002).

Even assuming, *arguendo*, that Plaintiff's administrative complaint addressed a matter of public concern, she would also be required to allege a connection between the protected activity and some adverse employment action.  "'To establish causation, a plaintiff must show that the protected speech "was a substantial motivating factor in the adverse employment action.'"'  *Nagle v. Marron*, 663 F.3d 100, 109 (2d Cir. 2011) (quotation omitted); *see Dotson v. City of Syracuse*, No. 5:04-CV-1388, 2009 WL 2176127, *24 (N.D.N.Y. July 21, 2009) (citations omitted).  As previously discussed, the Court finds that Plaintiff fails to indicate any causal connection between the claimed protected activity (Plaintiff's filing of an administrative

complaint) and the alleged adverse employment action (Defendants' implementation of an Assistance Plan).  Accordingly, the Court grants Defendants' motion for judgment on the pleadings and dismisses Plaintiff's First Amendment retaliation claim.

Plaintiff's ninth cause of action also asserts retaliation claims against Defendant School District based on an unlawful custom, practice, or policy and a failure to train.  Specifically, Plaintiff alleges that Defendant School District's "actions and omissions . . . constitute municipal policy of retaliation since they are the actions and omissions of final policy making officials of [Defendant School District]" and that it "created, maintained and/or fostered a custom, policy or practice of retaliation thereby causing Plaintiff injury and harm."  *See* Proposed Amended Complaint at ¶ 78.  In her failure to train claim, she alleges that Defendant School District "failed to adequately train and/or supervise employees and supervisors in the preservation and enforcement of rights of employees to be free from . . . retaliation."  *See id.* at ¶ 79.  In further support of these claims, to show that Defendant School District is aware of "numerous complaints of discrimination," Plaintiff alleges that "no investigation was conducted and/or discipline imposed on the Principal of the Dr. King School who told a teacher (Thomas Moore) that he needed to tolerate being called 'Nigger' . . . ."  *See id.* at ¶ 45.  Plaintiff does not attribute this alleged incident to any supervisory official or policymaker related to this case; and, as such, the Court affords it little weight in determining whether a retaliatory custom, practice, or policy and/or a failure to train may be inferred as against Defendant School District.

Defendant School District can only be held liable under § 1983 if its "'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"  *Back*, 365 F.3d at 128 (quotation and footnote omitted).

-31-

Liability may also be inferred if the policymaking official "ha[d] final authority over significant matters involving the exercise of discretion . . . . [such that] his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983) (citations omitted).

The Court finds that Plaintiff fails to allege facts plausibly suggesting either a custom, practice, or policy of retaliation against employees for engaging in protected activities or a failure to train employees in this regard. Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's ninth cause of action in its entirety.

> ### d. Tenth cause of action: 42 U.S.C. § 1983 custom, practice, or policy claim and discriminatory hiring, discipline, lack of promotion, retaliation, and disparate treatment claims against Defendant School District

In her tenth cause of action, Plaintiff alleges that "[t]he discriminatory hiring, discipline, lack of promotion, retaliation, and disparate treatment of women and minority employees of [Defendant School District] is so pervasive and widespread that it has the effect of a custom, practice and/or policy, harming the Plaintiff." *See* Proposed Amended Complaint at ¶ 82. Plaintiff further alleges that "Defendant Lowengard has final policymaking authority in which he failed to enforce and/or insure the enforcement of laws prohibiting such discriminatory and retaliatory treatment" and that he "and other policy making officials knew of the past and present discriminatory practices and policies of [Defendant School District] and did not and have not acted to correct same." *See id.* at ¶¶ 83-84. Finally, Plaintiff alleges that "these supervisory Defendants knew of the acts of the other Defendants in creating and subjecting Plaintiff to a hostile work environment and retaliation and did not act to prevent or correct same, thus

violating Plaintiff's rights." *See id.* at ¶ 84.

The Court dismisses this claim as duplicative of Plaintiff's eighth and ninth causes of action.

### 5. 42 U.S.C. § 1981 (twelfth, thirteenth, and fourteenth) claims

The Civil Rights Act of 1991, 42 U.S.C. § 1981, protects an individual's right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a) & (b). In order to recover under § 1981, a plaintiff must show that (1) she is a member of a racial minority; (2) the defendant intentionally discriminated against her on the basis of her race; and (3) the discrimination concerned one or more of the activities enumerated in § 1981. *See Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000) (citation omitted).

Plaintiff is presumably asserting that, by their alleged racially discriminatory actions, Defendants interfered with her employment contract in violation of § 1981. She asserts the following three § 1981 causes of action: a hostile work environment claim on the basis of her race against Defendants (twelfth); a disparate treatment claim on the basis of her race against Defendants (thirteenth); and a retaliation claim against Defendants (fourteenth).

"Section 1983 provides the exclusive remedy for violations of the rights guaranteed under § 1981 in a claim against a state actor." *Ragin v. Newburgh Enlarged City Sch. Dist.*, No. 06

-33-

Civ. 2797, 2009 WL 4906111, *5 (S.D.N.Y. Dec. 17, 2009) (citations omitted); *Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002) (citation omitted). Here, Defendant School District and the individual Defendants are "state actors." *See Ragin*, 2009 WL 4906111, at *5 (citation omitted); *Ya-Chen Chen v. City Univ. of N.Y.*, No. 11 Civ. 0320, 2011 WL 5419792, *5 (S.D.N.Y. Nov. 9, 2011) (quotations omitted). Accordingly, the Court finds that "'to the extent [Plaintiff] seeks to vindicate any independent rights under 42 U.S.C. § 1981, [s]he must do so via claims under § 1983.'" *Ya-Chen Chen*, 2011 WL 5419792, at *5 (quotation omitted); *Negron*, 2011 WL 4737068, at *14 (quotation and other citation omitted).

Therefore, the Court grants Defendants' motion for judgment on the pleadings and dismisses Plaintiff's twelfth, thirteenth, and fourteenth causes of action.

## IV. CONCLUSION

Accordingly, having reviewed the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for judgment on the pleadings is **DENIED** with regard to Plaintiff's third cause of action under the NYSHRL for racial discrimination against Defendants Dittman and Stewart; and the Court further

**ORDERS** that Defendants' motion for judgment on the pleadings is **DENIED** with regard to Plaintiff's seventh cause of action under 42 U.S.C. § 1983 insofar as she alleges a hostile work environment and discrimination on the basis of her race and gender against Defendants Dittman and Stewart in their individual capacities; and the Court further

**ORDERS** that Defendants' motion for judgment on the pleadings is **GRANTED WITHOUT PREJUDICE** with regard to Plaintiff's seventh cause of action under 42 U.S.C. § 1983 insofar as she alleges a hostile work environment and discrimination on the basis of her race and gender against Defendant Lowengard in his individual capacity.; and the Court further

**ORDERS** that Defendants' motion for judgment on the pleadings is **GRANTED WITHOUT PREJUDICE** with regard to Plaintiff's eighth cause of action under 42 U.S.C. § 1983 insofar as she alleges a custom, practice, or policy of a hostile work environment and discrimination against Defendant School District; and the Court further

**ORDERS** that Defendants' motion for judgment in the pleadings is **GRANTED WITH PREJUDICE** in all other respects; and the Court further

**ORDERS** that Plaintiff's motion to amend is **GRANTED** so as to allow her to include in her amended complaint the additional factual allegations set forth in her proposed amended complaint, but not to add the additional causes of action set forth therein because it would be futile to assert those claims, and to replead her two claims that are herein dismissed without prejudice in a manner consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiff shall file any such amended complaint within **thirty days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that this case shall be referred to Magistrate Judge Dancks for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: March 19, 2012
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge