UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**CORENE D. CARTER, also known as CORENE BROWN**

                           **Plaintiff,**

                v.                               5:10-CV-690
                                                    (FJS/TWD)

**THE CITY OF SYRACUSE SCHOOL DISTRICT, DANIEL LOWENGARD, JOHN DITTMAN, JILL STEWART, JOHN DOE(S) and JANE DOE(S),**

                           **Defendants.**

_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **BOSMAN LAW OFFICE** | **AJ BOSMAN, ESQ.** |
| 6599 Martin Street | **DANIEL W. FLYNN, ESQ.** |
| Rome, New York 13440 | |
| Attorneys for Plaintiff | |
| | |
| **FERRARA, FIORENZA, LARRISON, BARRETT & REITZ, P.C.** | **ERIC J. WILSON, ESQ.** |
| | **MILES G. LAWLOR, ESQ.** |
| 5010 Campuswood Drive | |
| East Syracuse, New York 13057 | |
| Attorneys for Defendants | |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court are Defendants' motion for summary judgment, *see* Dkt. No. 86, and Plaintiff's motion to take the deposition of Benjamin Frazier, *see* Dkt. No. 100.

**II. BACKGROUND**

On March 18, 2013, this Court issued a Memorandum-Decision and Order, in which it granted in part and denied in part Defendants' motion to strike Plaintiff's Amended Complaint and ordering Plaintiff to file a Second Amended Complaint to include only the following causes of action:

> (1) cause of action pursuant to New York State Human Rights Law ("HRL") against Defendants John Dittman and Jill Stewart;
>
> (2) cause of action pursuant to 42 U.S.C. § 1983 against Defendants Dittman, Stewart, and Daniel Lowengard; and
>
> (3) cause of action pursuant to 42 U.S.C. § 1983 against Defendant School District.

*See* Dkt. No. 46, Memorandum-Decision and Order at 7.

As ordered, Plaintiff filed her Second Amended Complaint on April 17, 2013, alleging the following: (1) School District employees and officials interfered with her ability to teach her class, apparently sometimes while conducting evaluations that she deemed unwarranted and unfair; (2) employees and officials made racially discriminatory comments; (3) officials failed to properly respond to her complaints and indeed retaliated against her for making them; (4) she suffered psychiatric harm as a result of this treatment; and (5) there has been a pattern of similar discrimination within the School District. *See* Dkt. No. 47, Second Amended Complaint.

### III.  DISCUSSION

**A.  Defendants' motion for summary judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At the summary judgment stage, the court's role is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In making this determination, the court must view the evidence in the record and draw all reasonable inferences in the light most favorable to the non-moving party.  *See Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 1:06–CV–871, 2010 WL 2735701, *3 (N.D.N.Y. July 9, 2010) (citation omitted).

Summary judgment is appropriate if the party that bears the burden of proof at trial fails to establish an essential element of its case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*, 477 U.S. at 247–48.  Thus, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998) (citation omitted).

**B. Standard of review for all of Plaintiff's claims**

Courts analyze employment discrimination claims using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), whether the plaintiff brings these claims under the HRL, § 1983, or Title VII. *See, e.g.*, *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004) (42 U.S.C. § 1983 Equal Protection case); *Kwan v. Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (HRL case). To establish a prima facie case of discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). In this case, the only elements that the parties dispute are whether Plaintiff suffered an adverse employment action and whether the circumstances give rise to an inference of discrimination. Therefore, the Court will limit its analysis to these elements and assume that Plaintiff is a member of a protected class and that she is qualified for her position.

**C. Plaintiff's HRL claim against Defendants Dittman and Stewart**

Under the HRL, a plaintiff may sue individuals for discriminatory acts, as well as for aiding and abetting the discriminatory conduct of others. *See Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004). An employment discrimination claim's adverse employment action requirement, otherwise known as a "tangible" employment action, requires that a plaintiff demonstrate "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

4

significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (citations omitted).

Here Plaintiff brings claims against Defendants Dittman and Stewart for their conduct as well as their aiding and abetting of the discriminatory conduct of others. Plaintiff alleges that two co-workers at the high school where she worked, Betty Milligan and Rich List, regularly interrupted her class. *See* Second Amended Complaint at ¶ 23. She alleges that she reported these interruptions to Defendant Dittman and that he "agreed that such conduct was motivated by Plaintiff's race and gender." *See id.* at ¶ 24. Plaintiff alleges that Defendant Dittman "refused to take any corrective action" and that, "[t]hereafter, people were told not to speak with Plaintiff." *See id.*

Plaintiff further alleges that, in or about March 2009, she learned that Defendant Stewart would conduct an evaluation of her. *See id.* at ¶ 33. Plaintiff contends that Defendant Stewart deliberately conducted her evaluation on a date when students were completing year-end projects "because she wanted to find fault with Plaintiff" and that this was a "sham evaluation." *See id.* She asserts that Defendants Dittman and Stewart "monitored [her] intensely and unfairly found fault with her job performance." *See id.* at ¶ 48. She alleges that she "was thereafter placed on an 'assistance plan' and thereby became ineligible to participate in such programs as 'Master Teacher,' causing her a loss of income." *See id.* at ¶ 35. She claims that her "Teacher Improvement Plan" was "unwarranted and discriminatory." *See id.* at ¶ 50. Plaintiff contends that white and/or male teachers, whose performance was equal and worse, were not given unsatisfactory evaluations nor required to participate in a Teacher Improvement Plan. *See id.*

5

Finally, Plaintiff alleges that Defendant Dittman "passed Plaintiff over" for an assignment to teach an advanced English class and gave the assignment to one of Plaintiff's white co-workers who "had no teaching credentials." *See id.* at ¶ 26.

With regard to the inference of discrimination arising from these allegedly negative actions, Plaintiff points to certain comments that her co-workers allegedly made. Plaintiff alleges that she received hearsay reports from unnamed others, including students, that Mr. List and another co-worker, Bob Pairaino, would regularly make racially disparaging comments to or regarding students. *See id.* at ¶¶ 25, 30. She alleges that she received additional hearsay reports from students that school officials questioned them about her and "invited [them] to complain." *See id.* at ¶ 29. She claims that hearing about these comments "distracted and interfered with her ability to teach." *See id.* at ¶ 25. Plaintiff also alleges that her work atmosphere was "further populated with comments about her personal vehicle." *See id.* at ¶ 28. White members of the faculty complained that the vehicle, a Black Lexus SUV, was a "drug dealer's car." *See id.* Plaintiff alleges that the school's Vice Principal, Ben Frazier, told her that the adverse treatment was due to her race and gender. *See id.* at ¶ 34.

Plaintiff also alleges that the school district's responses to her reports of ill-treatment and discrimination were inappropriate. Plaintiff asserts that, in December 2007, she communicated her complaints in writing, and within a period of approximately one week, her teaching responsibilities for all but five or six students were taken from her. *See id.* at ¶ 27. She claims that she complained to the School District's Director of Personnel, Randy Williams, who told her to "dig her heels in." *See id.* at ¶ 31. She alleges that she also complained to Defendant Lowengard, who, instead of taking her concerns seriously, complained to her that she was "hard to get along with," and was not a "team player." *See id.* at ¶ 32. She alleges Defendant

6

Lowengard took no remedial action, that he stated he could transfer Plaintiff but no other Principal would take her after they spoke with Defendant Dittman, and that he offered no helpful solution or assistance. *See id.*

Furthermore, Plaintiff asserts that, after she filed a complaint of discrimination with the New York State Division of Human Rights ("DHR"), Defendants escalated their efforts to harm her by "constantly" contacting her at home despite "knowing that she was out ill" and sending certified mail to her residence, actions which Plaintiff alleges are "not protocol." *See id.* at ¶¶ 37-38. Plaintiff apparently alleges that her DHR complaint included allegations about "discriminatory treatment of African-American students." *See id.* at ¶ 43.

Plaintiff asserts that her treating psychiatrist took her out of work on or about October 26, 2009 "due to work[-]related stress." *See id.* at ¶ 40. On or about August 24, 2010, after the psychiatrist authorized Plaintiff to return to work, the School District "was requested to provide a reasonable accommodation and relocate[] Plaintiff to another school." *See id.* at ¶ 41. She also contends that "Defendants refused Plaintiff's doctor's requested accommodation and, to date, she has not been returned to work." *See id.* at ¶ 42. She alleges that Defendants could have transferred her without difficulty and would have done so had she not complained about discrimination; a faculty member's request for a transfer is typically honored. *See id.*

Having reviewed all of Plaintiff's allegations, this Court concludes that Plaintiff has failed to make a *prima facie* case of employment discrimination because the admissible facts she has alleged would fail to establish the existence of an adverse employment action and the inference of discrimination, the third and fourth elements of an employment discrimination claim. *See Weinstock*, 224 F.3d at 41. For many of the alleged incidents underlying Plaintiff's discrimination claim there is no admissible, substantive evidence that they actually occurred.

7

Moreover, most of the alleged conduct underlying the first cause of action is trivial in nature and/or does not involve adverse employment actions that would support a viable New York State Human Rights Law ("HRL") cause of action. For those events for which there is some evidentiary support, there is no evidence that race or gender discrimination was involved.

For instance, Plaintiff admits the coworker whom Plaintiff accused of disrupting her classroom was a special-education teacher whose job it was to enter other teachers' classrooms to work with special education students. *See* Dkt. No. 85-6, Deposition of Corene D. Carter ("Carter Depo.") at 29-30. Plaintiff also admits that the other interruptions to her class included one instance where a science and technology teacher silently entered her classroom to observe students using computers and one instance where he entered the classroom to inform several students that they were supposed to be in another class. *See id.* at 38-39.

The allegations listed above are not adverse employment actions. Even if they were, Plaintiff has not offered any facts to support her argument that racial or gender bias motivated her co-workers' actions. When asked why she believed these actions to be racist or sexist, she replied:

> Because I know what racism looks like. I know what it feels like. I know what it acts like. I know what it sounds like. I know what it is. Again, I was the only African-American female educator in the building, aside from Mr. Frazier, who was an administrator.

*See id.* at 40.

As for Plaintiff's belief that her own performance merited better evaluations and assignments, this is an inadmissible conclusory allegation that will not defeat a summary judgment motion. *See Sellick v. Agency-Castle Point*, No. 09 Civ. 6616, 2010 WL 2813431, *7 (S.D.N.Y. July 16, 2010). As this Court noted in its March 19, 2012 Memorandum-Decision and Order, "[a] negative job evaluation is not itself an adverse employment action." *See* Dkt. No. 32 at 19 (quoting *Altieri v. Albany Pub. Library*, 2005 WL 1388905, *3 (N.D.N.Y. June 8, 2005)

8

(citations omitted)). Likewise, placement on a performance improvement plan does not constitute an adverse employment action. *See Waters v. Gen. Bd. of Global Ministries*, 769 F. Supp. 2d 545, 558 (S.D.N.Y. 2011) (citations omitted).

Furthermore, Plaintiff's allegations regarding the "Master Teacher" program are conclusory. She provides no evidence that such a program ever existed, that she sought to participate in it, or that she was denied from doing so.

In conclusion, this Court grants Defendants' motion for summary judgment with regard to Plaintiff's HRL cause of action.

**D. Plaintiff's § 1983 claims against Defendants Dittman, Stewart, and Lowengard**

In her second cause of action, Plaintiff asserts that Defendants Dittman, Stewart, and Lowengard violated her right to equal protection by subjecting her to a discriminatory and hostile work environment. *See* Second Amended Complaint at 14. Since Plaintiff has asserted these claims against these Defendants in their individual capacities, Plaintiff must show (1) that each individual was acting under color of state law; and (2) that his or her conduct deprived Plaintiff of a constitutional or federal statutory right. *See Washington v. Cnty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004). With regard to Plaintiff's hostile work environment claim, Plaintiff must establish that the alleged harms created a workplace "'permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ronga v. New York City Dep't of Educ.*, No. 10 Civ. 03327, 2011 WL 1327026, *5 (S.D.N.Y. Mar. 31, 2011) (quotation omitted). Plaintiff must also establish the individual's personal involvement in the discrimination at issue because there is no respondeat superior liability under § 1983. *See*

*Zambrano-Lamhaouhi*, 866 F. Supp. 2d 147, 162 (E.D.N.Y. 2011) (citations omitted); *Back*, 365 F.3d at 127.

Plaintiff bases her § 1983 discrimination and hostile work environment claims on the same allegations that she used to support her HRL discrimination claims. *See* Second Amended Complaint at ¶ 59; Dkt. No. 91, Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 24. In response to Defendants' motion for summary judgment, Plaintiff points specifically to the instances where a teacher entered her classroom to inform students that they were in the wrong room, characterizing these as "extremely disruptive" behavior. *See id.* She refers also to the hearsay reports she received about racially offensive comments by her coworkers. *See id.* She also alleges that there was "never an effort made to ever independently verify if any of [her coworkers'] comments were said . . ." *See id.* However, Plaintiff admits that "the comments never rose to the levels of racial epithets" but argues that "there were still repeat references specifically to race, and disparagement specifically against Black people." *See id.* at 25. She also alleges that a coworker "criticized the grades of Plaintiff regularly, something he did not do to White teachers, despite Plaintiff and the White teachers having similar numbers of failing students." *See id.*

As the Court noted above in its consideration of Plaintiff's HRL claim, Plaintiff has failed to present admissible evidence of adverse employment actions or racial or gender animus. The isolated incidents of classroom interruption do not rise to the level of an adverse employment action, nor can they be characterized as sufficiently severe or pervasive to constitute a hostile work environment. *See Burlington*, 524 U.S. at 761; *see also Ronga*, 2011 WL 1327026, at *5. Likewise, Plaintiff's other allegations regarding discrimination as well as a hostile work environment are conclusory, based upon inadmissible hearsay, and/or trivial in nature. *See* Part

III.C., *supra*. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's § 1983 cause of action.

**E. Plaintiff's § 1983 claim against Defendant City of Syracuse School District**

Plaintiff's third cause of action asserts that Defendant Syracuse City School District imposed a discriminatory custom, practice, or policy of discriminating on the basis of race and/or gender. In its March 19, 2012 Order, the Court dismissed this cause of action (denominated at the time as Plaintiff's Eighth Cause of Action) without prejudice, finding that Plaintiff had failed to allege sufficient factual allegations tending to show the existence of a discriminatory custom, practice, or policy of the District. *See* Dkt. No. 32. Plaintiff's Second Amended Complaint did not cure her earlier pleading deficiency. A plaintiff may bring a § 1983 claim against a municipal corporation for "deprivation of any rights, privileges, or immunities secured by the Constitution . . ." where the municipality causes such deprivation through a governmental custom, policy, or usage. *Monell v. Dep't of Soc. Svcs.of City of N.Y.*, 436 U.S. 658, 690-91 (1978). In order to establish such a governmental custom, policy, or usage, "it is not enough for a . . . plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). Here, Plaintiff has not alleged any evidence of such deliberate conduct on the part of Defendant School District. Instead, she has made more conclusory allegations against Defendant School District, alleging that it terminates minority employees without just cause, holds them to higher standards of performance, stereotypes them, denies equal benefits and privileges, and allows co-workers to harass them with impunity. *See* Second Amended Complaint at ¶ 44.

Plaintiff's proffered evidence in support of this allegation is a list of other employees and former employees of the School District, whom Plaintiff alleges were subject to racial discrimination. *See id.* at ¶¶ 46-47. Plaintiff does not provide evidence from any of these persons and, as Defendants note, she appears to have taken their information from a list of previous discrimination cases provided to Plaintiff by Defendants in discovery. *See* Dkt. No. 85, Defendants' Motion for Summary Judgment at 32.

Plaintiff's list of lawsuits alleging similar constitutional violations is not probative of the existence of an unconstitutional policy or practice. *See Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 23 (2d Cir. 2012) (stating that "citation to various lawsuits . . . [alleging similar violations of constitutional rights] is not probative of the existence of an underlying policy"). These conclusory allegations fail to sufficiently plead the existence of a District practice of discriminating and/or creating a hostile work environment based upon gender or race. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's third cause of action.

**F. Plaintiff's motion to depose Mr. Frazier**

Plaintiff has moved pursuant to Rule 56(d) of the Federal Rules of Civil Procedure to re-open discovery to depose Benjamin Frazier, an official of Defendant School District, whom Plaintiff alleges would give a different account under deposition than that which he gave in his signed affidavit to Defendants. *See* Dkt. No. 100-2, Memorandum of Law at 1. Plaintiff, however, has failed to demonstrate that she could not have deposed Mr. Frazier during the discovery period, and there is nothing in the record to indicate that she did not have ample time to do so. Therefore, the Court denies Plaintiff's motion.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 86, is **GRANTED** with respect to all of Plaintiff's causes of action; and the Court further

**ORDERS** that Plaintiff's motion to depose Mr. Frazier, *see* Dkt. No. 100, is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED**

Dated: June 25, 2015
       Syracuse, New York

_____
Frederick J. Scullin, Jr
Senior United States District Judge