**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CORENE D. CARTER**
**a/k/a CORENE BROWN,**

                              **Plaintiff,**

                   **v.**                                    **5:10-CV-690**
                                                               **(FJS/TWD)**

**THE CITY OF SYRACUSE SCHOOL**
**DISTRICT, DANIEL LOWENGARD,**
**JOHN DITTMAN, JILL STEWART,**
**and JOHN DOE(S) and JANE DOE(S),**

                              **Defendants.**
_____

**APPEARANCES**                            **OF COUNSEL**

**BOSMAN LAW FIRM, LLC**                   **A.J. BOSMAN, ESQ.**
3000 McConnellsville Road
Blossvale, New York 13308
Attorneys for Plaintiff

**FERRARA FIORENZA P.C.**                  **ERIC J. WILSON, ESQ.**
5010 Campuswood Drive                      **MILES G. LAWLOR, ESQ.**
East Syracuse, New York 13057
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

      Corene Carter (Brown) ("Plaintiff"), a high school English teacher at Defendant City of

Syracuse School District's Institute of Technology ("Tech"), brought this action based on race

and gender discrimination against her employer, the City of Syracuse School District

("Defendant District"), its former superintendent ("Defendant Lowengard"), the former

principal of Tech ("Defendant Dittmann"), the former Vice Principal of Tech and Coordinator

of Defendant District's Health and Careers program ("Defendant Stewart"), and John Doe and Jane Doe as "individuals not yet known to the Plaintiff" seeking compensatory damages in an amount not less than two million dollars, punitive damages in an amount not less than three million dollars, injunctive relief, declaratory relief, and attorney's fees, with interest on all amounts due. *See generally* Dkt. No. 47, Second Amended Compl.

## II. BACKGROUND

### A. Procedural history

Plaintiff filed her complaint in this action on June 14, 2010, after many of the alleged incidents occurred. *See* Dkt. No. 1, Compl. In response, Defendants filed a motion to dismiss for failure to state a claim and a motion for summary judgment. *See* Dkt. No. 17, Defs' Mot. Dismiss and Defs' Mot. Summ. J (2011). Plaintiff then cross-moved to amend her complaint to add various causes of action. *See* Dkt. No. 24, Pl.'s Cross Mot. to Amend Compl.

In its March 19, 2012 Order, the Court denied Plaintiff's motion to amend her complaint and granted Defendants' motion in part, dismissing several causes of action, including the following:

(a) First cause of action for hostile work environment and racial discrimination pursuant to Title VII against Defendant District;

(b) Second cause of action for racial and gender discrimination pursuant to the New York State Human Rights Law ("HRL") against Defendants District and Lowengard (not decided on the merits);

(c) Fourth cause of action for retaliation pursuant to Title VII against Defendant District;

(d) Seventh cause of action for hostile work environment and racial and gender discrimination pursuant to 42 U.S.C. § 1983 against Defendant Lowengard (without prejudice);

      (e)  Eighth cause of action for custom, practice, or policy of a hostile work environment and discrimination pursuant to 42 U.S.C. § 1983 against Defendant District (without prejudice);[1]

*See* Dkt. No. 32, Memorandum-Decision and Order (2012), at 34-35.

The Court denied Defendants' motion with respect to Plaintiff's third cause of action for discrimination pursuant to the HRL against Defendants Dittmann and Stewart and Plaintiff's seventh cause of action for race and gender discrimination and hostile work environment pursuant to 42 U.S.C. § 1983 against Defendants Dittmann and Stewart. *See id.* The Court dismissed all of Plaintiff's claims against Defendants District and Lowengard.

Plaintiff then amended her complaint on May 3, 2012, following the Court's 2012 Order. *See* Dkt. No. 34, Amended Compl. Defendants immediately moved to strike Plaintiff's amended complaint. *See* Dkt. No. 36, Defs' Mot. Strike Amended Compl. After consideration, the Court ordered Plaintiff to file a Second Amended Complaint. *See* Dkt. No. 46, Memorandum-Decision and Order (2013), at 7.

In her Second Amended Complaint (the most recent complaint), Plaintiff asserts three causes of action. Plaintiff's first cause of action against Defendants Dittmann and Stewart alleges discrimination pursuant to the HRL. Her second cause of action alleges discrimination and a hostile work environment created by Defendants Lowengard, Dittmann, and Stewart, pursuant to 42 U.S.C. § 1983. Third, also pursuant to 42 U.S.C. § 1983, Plaintiff alleges municipal liability against Defendant District. *See* Dkt. No. 47 at ¶¶ 56-62.

---

[1] Since the Second Circuit remanded this case, each of these causes of action are revived and are before the Court on Defendants' pending motion. Notably, the Court dismissed Plaintiff's HRL claim against Defendants District and Lowengard because she failed to file a notice of claim with the Board of Education. *See* Dkt. No. 32 at 13-15. The Court also dismissed Plaintiff's Title VII claims because she failed to adequately plead a cause of action. *See id.* at 18-20.

On May 23, 2014, Defendants filed a motion for summary judgment on those three remaining causes of action. *See* Dkt. No. 85, Defs' Mot. Summ. J. (2014). By Memorandum-Decision and Order dated June 25, 2015, the Court granted Defendants' motion for summary judgment on all claims and entered judgment in Defendants' favor. *See* Dkt. No. 112, Memorandum-Decision and Order (2015), at 13. The Court also denied Plaintiff's outstanding motion to depose former Vice Principal Ben Frazier because Plaintiff failed to demonstrate that she could not have deposed Mr. Frazier during the discovery period. *See id.* at 12.

Plaintiff appealed the Court's judgment to the Second Circuit. *See* Dkt. No. 114, Notice of Appeal. The Second Circuit then issued a summary order (1) vacating the Court's 2012 dismissal of Plaintiff's HRL claim against Defendants District and Lowengard because a notice of claim was not required, (2) vacating and remanding the Court's 2012 dismissal of Plaintiff's Title VII discrimination and retaliation claims because they were adequately pled, and (3) vacating, as an abuse of discretion, the Court's 2015 denial of leave to reopen discovery to depose Mr. Frazier. *See* Dkt. No. 116, Summary Order (July 11, 2016), 19-20. The Second Circuit also urged the Court to reconsider its 2015 grant of summary judgment for Defendants, listing its concerns, including key facts it believed the Court had overlooked. *See id.* at 15-18.

Thereafter, Defendants petitioned the Second Circuit for a rehearing on the HRL claim against Defendants District and Lowengard because the New York Court of Appeals had recently decided a case on the notice of claim issue in *Margerum v. City of Buffalo*. *See* Dkt. No. 117, Summary Order II, at 2 (August 8, 2016). The Second Circuit granted the rehearing, vacated its own judgment on the issue, and remanded the Court's dismissal of Plaintiff's HRL claim for reconsideration in light of the new caselaw. *See id.* at 3. It also instructed the Court to treat this issue as if it were brought in the first instance. *See id.*

On September 16, 2016, the Second Circuit issued its mandate with regard to its summary order and required the deposition of Mr. Frazier. *See* Dkt. No. 118, Mandate. Plaintiff deposed Mr. Frazier on June 22, 2017. *See* Dkt. No. 144, Status Report.

### B. Defendants' pending motion for summary judgment

Defendants filed the pending motion for summary judgment on August 31, 2017. *See* Dkt. No. 148, Defs' Mot. Summ. J. (2017). Based on the Second Circuit's mandate, the Court must first decide whether Plaintiff may amend her complaint to add an HRL claim against Defendants District and Lowengard in light of new caselaw. Second, the Court must decide whether Defendants are entitled to summary judgment on the following claims:

(1) Plaintiff's HRL discrimination claim against Defendants Dittmann and Stewart;

(2) Plaintiff's § 1983 discrimination and hostile work environment claims against Defendants Lowengard, Dittmann, and Stewart;

(3) Plaintiff's Title VII discrimination and hostile work environment claims against Defendant District;

(4) Plaintiff's § 1983 municipal liability claim against Defendant District; and

(5) Plaintiff's Title VII retaliation claim against Defendant District.

### III. DISCUSSION

### A. Whether dismissal of Plaintiff's HRL claim against Defendants District and Lowengard is warranted in light of *Margerum v. City of Buffalo*

In light of the recent New York Court of Appeals' decision in *Margerum v. City of Buffalo*, the Second Circuit asked the Court to consider Plaintiff's HRL claim against Defendants District and Lowengard "in the first instance." *See* Dkt. No. 117.

In *Margerum,* twelve white firefighter plaintiffs alleged that the City engaged in reverse disparate treatment and racial discrimination by permitting promotion eligibility lists to expire

before their maximum legal duration, thus giving black firefighters with less tenure than white firefighters a better chance of being promoted. *See Margerum v. City of Buffalo*, 24 N.Y.3d 721, 728 (2015). The *Margerum* plaintiffs alleged that this violated the HRL, the Civil Service Law, and the New York State Constitution. *See id.*

The City argued on appeal that the case should be dismissed on the basis of the plaintiffs' failure to file a notice of claim prior to commencement of this action pursuant to General Municipal Law ("GML") §§ 50-e(1)(a) and 50-i.[2] *See id.* at 730. The Court of Appeals held, however, that "[h]uman rights claims are not tort actions under 50-e and are not personal injury, wrongful death, or damage to personal property claims under 50-i." *Id.* Accordingly, the court concluded "that there is no notice of claim requirement here." *Id.*

The court also noted that the lower courts had determined that the GML "does not encompass a cause of action based on the Human Rights Law and '[s]ervice of a notice of claim is therefore not a condition precedent to commencement of an action based on the Human Rights Law in a jurisdiction where General Municipal Law §§ 50-e and 50-i provide the *only* notice of claim criteria.'" *Id.* (quoting *Picciano v. Nassau Cnty. Civ. Serv. Comm'n*, 290 A.D.2d 164, 170 [(2d Dep't 2001)]) (other citations omitted) (emphasis added).

Thus, the *Margerum* court ultimately held that a plaintiff need not file a notice of claim for an HRL claim against a municipality under the GML, but it left open the possibility that a notice of claim may be required under another statutory scheme. Based on this, Defendants argue that New York's Education Law is a separate statutory scheme with its own notice of claim requirement that is much broader in scope than the GML requirement; and, thus, the

---

[2] GML §§ 50-e(1)(a) and 50-i require service of a notice of claim in cases "founded upon tort" or "for personal injury, wrongful death or damage to real or personal property" against public corporations or cities. *Margerum*, 24 N.Y.3d at 730.

*Margerum* ruling does not affect claims asserted against public school districts. *See* Dkt. No. 148-18, Defs' Memorandum in Support, at 13-14.

Section 3813 of the Education Law requires plaintiffs to file a notice of claim with the governing body of a school district before filing a complaint. Part one provides, in relevant part:

> **No action or special proceeding, for any cause whatever,** except as hereinafter provided, relating to district property or property of schools … or claim against the district or any such school, or involving the rights or interests of any district or any such school **shall be prosecuted or maintained against any school district,** board of education, board of cooperative educational services, … **or any officer of a school district,** board of education, board of cooperative educational services … **unless** it shall appear by and as an allegation in the complaint or necessary moving papers that **a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school** within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment …

*See* N.Y. Educ. L. § 3813(1) (emphasis added).[3]

State and federal court decisions since *Margerum* have held that Education Law § 3813(1) is broader than the GML; and, "'[a]s a result, its notice of claim requirement applies to employment discrimination claims against school districts and their officers under the NYSHRL…" *United States v. New York City Dep't of Educ.,* Nos. 16-CV-4291 (LAK), 16-CV-4844 (LAK), 2017 U.S. Dist. LEXIS 51379, *4 (S.D.N.Y. Apr. 4, 2017) (emphasis omitted); *see also Peritz v. Nassau Cnty. Bd. of Coop. Educ. Servs.,* No. 16-CV-5478, 2019

---

[3]This notice of claim requirement applies to Defendant District and Defendant Lowengard, who, as Superintendent, is a school officer under the Education Law. *See* N.Y. Educ. L. § 2. Defendants Dittmann and Stewart, however, are not school officers in their positions as principal and vice principal; and, therefore, Plaintiff was *not* required to file a notice of claim to assert a cause of action against them under the Education Law.

U.S. Dist. LEXIS 96079 (E.D.N.Y. June 7, 2019). Plaintiffs are thus required to serve a notice of claim upon defendant School Boards or Departments of Education, and the notice of claim must conform to § 3813(1)'s requirements. *See Seifullah v. City of New York*, 161 A.D.3d 1206, 1206-07 (2d Dep't 2018); *Bagarozzi v. New York City Dep't of Educ.,* No. 18-CV-4893 (RA), 2019 U.S. Dist. LEXIS 56533, *10 (S.D.N.Y. Mar. 31, 2019); *see also* N.Y. Educ. L. § 3813(1). [4]

In this case, Plaintiff argues that it is undisputed that she *did* file a notice of claim and that Defendants received it. *See* Dkt. No. 155-16, Pl.'s Memorandum in Opposition, at 12-13. Plaintiff sent a copy of her notice of claim to Defendant Lowengard with the body of the email stating, "for service upon the City of Syracuse School District." *See* 148-10, Aff. of Def. Stewart, Exs. G, H, I. None of these complaints, however, were "presented to the *governing body* of said district or school." N.Y. Educ. § 3813(1) (emphasis added).[5] Plaintiff's attorney did not serve the notice of claim upon the Board of Education.

---

[4] Even state and federal courts applying statutory schemes outside of the education context have interpreted *Margerum* in this way by requiring notices of claim when other statutory schemes are broader than the GML. In *Sager v. Cnty. of Sullivan*, the Third Department held that County Law § 52 (mandating a notice of claim for "any claim… against a county for damage" or "any other claim for damages arising at law or in equity") was much broader in scope than the GML. *See Sager v. Cnty. of Sullivan*, 145 A.D.3d 1175, 1176-77 (3d Dep't 2016). Thus, the trial court properly granted the defendant's motion to dismiss because the plaintiff had failed to comply with the notice of claim requirement. *See id.* at 1177; *see also, e.g., Russell v. Westchester Cmty. Coll.,* No. 16-CV-1712 (KMK), 2017 U.S. Dist. LEXIS 159540 (S.D.N.Y. Sept. 27, 2017) (same); *Melendez v. Cnty. of Westchester*, No. 17-CV-9637 (NSR), 2019 U.S. Dist. LEXIS 10899 (S.D.N.Y. Jan. 23, 2019) (same).

[5] *See also Nelson v. Mount Vernon City Sch. Dist.*, No. 15-CV-8276 (KMK), 2017 U.S. Dist. LEXIS 42305, *10 (S.D.N.Y. Mar. 23, 2017) (holding that "presentment" under § 3813(1) must be made to the governing body of the school district (the Board of Education), not the Superintendent); *Parochial Bus Sys., Inc. v. Bd. of Educ. of City of N.Y.,* 60 N.Y.2d 539, 548 (1983).

Thus, the law has not changed since the Court's 2012 Order. Education Law § 3813(1) is a statutory prerequisite mandating service on the proper governing body, i.e., the Board of Education; and Plaintiff's failure to serve a notice of claim on the appropriate governing body is fatal to her HRL claims against Defendants District and Lowengard. *See Brtalik v. S. Huntington Union Free Sch. Dist.*, No. CV-10-0010, 2010 U.S. Dist. LEXIS 107373, *10 (E.D.N.Y. Oct. 6, 2010); *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 126-27 (W.D.N.Y. 2010); *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 366 (W.D.N.Y. 2010). As such, the Court dismisses Plaintiff's HRL claim against Defendants District and Lowengard.

## B. Plaintiff's discrimination claims[6]

The Court must consider whether Defendants are entitled to summary judgment on Plaintiff's discrimination claims pursuant to 42 U.S.C. § 1983, the HRL, and Title VII.[7] The Court discusses these causes of action together because they are all considered using the same "*McDonnell Douglas* test," a three-stage, burden-shifting framework for analyzing employment discrimination cases where a plaintiff alleges disparate treatment but does not have direct evidence of discrimination. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82-83 (2d Cir. 2015) (citing *McDonnell Douglas* [*Corp. v. Green*], 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 [(1973)] [developing a test for Title VII discrimination cases]); *see also Collymore v. City of New York*, 767 F. App'x 42, 44 (2d Cir. 2019) (Summary Order) (applying the

---

[6] Although Plaintiff alleges both race and gender discrimination in her complaint, the parties only discuss instances of alleged race discrimination in their memoranda.

[7] As this is Defendants' third motion for summary judgment, the Court assumes the parties' familiarity with the relevant standard and will not repeat that standard here.

*McDonnell Douglas* test to § 1983 discrimination claims); *Farias v. Instructional Sys., Inc.*, 259 F.3d 91 (2d Cir. 2001) (applying the *McDonnell Douglas* test to discrimination claims under the New York HRL).

Under the "*McDonnell Douglas* test," a plaintiff must first establish a *prima facie* case of discrimination by showing that "'(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Vega*, 801 F.3d at 83 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817)).[8]

After a plaintiff has established a *prima facie* case, "a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors." *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). At that point, the burden "shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817). "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination." *Id.* (citing [*McDonnell Douglas*, 411 U.S.] at 804, 93 S. Ct. 1817) (other citation omitted).

The third and fourth elements of Plaintiff's *prima facie* case are at issue here. Courts have held that a plaintiff suffers an adverse employment action that satisfies the third element if "'she endures a materially adverse change in the terms and conditions of [her] employment,'"

---

[8] Additionally, for a § 1983 claim, the defendants must have acted under color of state law. *See Hayut v. State Univ. of New York*, 352 F.3d 733, 743-44 (2d Cir. 2003). Defendants do not dispute that they are state actors for purposes of § 1983.

such as "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, a disproportionally heavy workload, or other indices unique to a particular situation.'" *Id.* at 85 (quoting [*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)]). Further, an adverse employment action must be "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d. Cir. 2003)). Under the fourth element of the *McDonnell Douglas* test, a plaintiff must present evidence "for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a *motivating factor*'" contributing to the employer's decision to take the adverse employment action. *Id.* (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003)) (internal quotation marks omitted).

The parties have identified the following nine situations that Plaintiff argues constitute "adverse employment actions": (1) she was given a negative evaluation without basis (the "sham" evaluation), which led to her placement on an assistance plan; (2) due to her placement on the assistance plan, Plaintiff could not be part of the Master Teacher program; (3) she was removed as Chairperson of the English Department; (4) she was kept from teaching 11th grade English; (5) she was kept from teaching Advanced English; (6) a white teacher with less experience took Plaintiff's classroom and she was forced to teach from a cart; (7) her teaching was frequently interrupted by other teachers; (8) she was "targeted" and her performance was "intensely scrutinized"; and (9) she was "mocked" about her vehicle and the race of her husband.

The Court can easily dispose of several of these claims because Plaintiff does not provide evidence to support them. For example, as Defendants point out, Plaintiff provides absolutely no evidence that the Master Teacher program exists or that she ever sought to participate in it. *See* Dkt. No. 148-18 at 21-22; *see also* Dkt. No. 148-3, Pl.'s Deposition, at 106-110 (revealing that Plaintiff has no substantive knowledge of the Master Teacher program); *see also* Dkt. No. 148-11, Aff. of Assistant Director of Personnel Ann Sanzone, at ¶ 7 (affirming that Defendant District does not have a "Master Teacher" program); Dkt. No. 155-12, Def. Dittmann's Deposition, 31:7-8 (testifying "I'm not familiar with that term, 'Master Teacher.'"). Furthermore, Plaintiff fails to cite to any evidence that not being "moved up" to teach 11th grade or chosen to teach Advanced English was due to her race or gender, or that it decreased her wage or salary, gave her a less distinguished title, diminished her responsibilities, or caused her a material loss of benefits. Plaintiff also does not cite any record evidence that supports her allegation that her classroom was taken, and replaced with a cart, because of her race or gender.[9] Thus, the Court finds that none of these incidents establish a *prima facie* case for Plaintiff's discrimination claim.

Turning to her remaining claims, Plaintiff first asserts that she was subjected to a "sham" evaluation leading to her placement on an assistance plan. "A negative job evaluation is not itself an adverse employment action." *Altieri v. Albany Pub. Library*, No. 1:05CV126(FJS/DRH), 2005 WL 1388905, *3 (N.D.N.Y. June 8, 2005) (citations omitted); *see also, e.g.*, *Rivera v. Potter*, No. 03Civ.1991LAP, 2005 U.S. Dist. LEXIS 1416, *19 (S.D.N.Y. Jan. 31, 2005) (holding "[e]ven a negative performance evaluation is not considered an adverse

_____

[9] In fact, Defendants point out that "all or most" Tech teachers (including white teachers and the one Plaintiff claims took her classroom) shared and moved between classrooms because of space constraints in the 2008-2009 and 2009-2010 school years. *See* Dkt. No. 159 at 10.

employment action" (citation omitted)); *Castro v. New York City Bd. of Educ. Personnel Dir.*, No. 96 Civ. 6314 (MBM), 1998 U.S. Dist. LEXIS 2863, *21 (S.D.N.Y. Mar. 12, 1998) (holding "negative evaluations … that are unattended by a demotion, diminution of wages, or other tangible loss do not materially alter employment conditions" (citations omitted)).

The assistance plan is included in Defendant District's Model for Practitioner Evaluation, and it is "the initial level to resolve a concern before it becomes a deficiency which requires a Corrective Action plan. It is the first notice to a practitioner that improvement of performance must take place." *See* Dkt. No. 148-18 at 6; *see also* Dkt. No. 155-15, Pl.'s Response to Stmt. of Material Facts, at ¶¶ 22-23. Plaintiff admitted that the assistance plan's intended purpose for which it was created was not disciplinary in nature. *See* Dkt. No. 155-15 at ¶ 24. If the assistance plan is not disciplinary in nature, but instead is designed to assist teachers in remedying identified weaknesses, then it is not a demotion or other tangible loss to the employee. Thus, the Court finds that Plaintiff's negative job evaluation – and subsequent placement on the assistance plan – are not adverse employment actions; and, thus, they do not satisfy the third element needed to establish a *prima facie* case under the *McDonnell Douglas* test.

Plaintiff also argues that being removed as Chairperson of the English Department at Tech was an adverse employment action. Plaintiff complains that she was the Chairperson of the English Department in the 2007-2008 school year, and allegedly Defendant Dittmann explained to Ms. Liddle that Plaintiff would continue in that role. *See* Dkt. No. 155-5, Pl.'s Supp. Aff., at ¶ 11. Notwithstanding this, in the 2009-2010 school year, Ms. Liddle became the Chairperson, and she no longer invited Plaintiff to attend any of the English Department meetings. *See id.* at ¶¶ 11, 16.

However, Defendants argue that, in the 2007-2008 school year, Plaintiff was the only English teacher assigned to Tech, and there is "no evidence of Plaintiff's appointment as Chairperson of the one-person English department." *See* Dkt. No. 159, Defs' Reply, at 9. Additionally, Defendants argue that, for the 2008-2009 and 2009-2010 school years, Ms. Liddle (who had more high school level teaching experience than Plaintiff) was elected Chairperson in a vote in which all of Tech's English teachers, including Plaintiff, participated. *See id.* Defendants further assert that Plaintiff's opposition does not cite any evidence that her "loss" of the Chairperson role resulted from race or gender bias. *See id.* at 10. These facts, taken together and in the light most favorable to Plaintiff, do not show a material change in her employment, a demotion, a decrease in wage or salary, or a loss of material benefits. Therefore, the Court finds that this is not an adverse employment action that would satisfy the third element of the *McDonnell Douglas* test.

Next, as Defendants note, the Second Circuit did not refer to Plaintiff's alleged classroom interruptions as possible adverse employment actions, but Plaintiff still argues that she suffered from such interruptions. *See* Dkt. No. 159 at 11-12. The interruptions that Plaintiff points to involve (1) a situation occurring on a "daily basis" in the 2007-2008 school year where Ms. Milligan, a special education teacher, entered Plaintiff's classroom to interact with disabled students, and that she spoke loudly over Plaintiff and interrupted Plaintiff's class, *see* Dkt. No. 155-16 at 3, 25, and (2) two instances where Mr. List either walked into the class, walked over to the students, looked at what they were doing and left or walked in and called off students' names very loudly, telling them they were to go to another class, *see* Dkt. No. 148-3 at 38:9-20.

In its 2015 Order, the Court found that the interruptions amounted to "isolated incidents" that do not rise to the level of an adverse employment action. *See* Dkt. No. 112 at 10. It also appears from the evidence that the teachers had legitimate, pedagogical reasons for being in Plaintiff's classroom and interacting with her students (it was Ms. Milligan's job to interact with disabled students and Mr. List was calling to students who were supposed to be in his class). *See id.*; *see also* Dkt. No. 148-18 at 30. Furthermore, Plaintiff is unable to identify why—beyond an internal understanding of racism that she described in her deposition—these interruptions were allegedly based on race, color, or gender bias. *See id.; see also* Dkt. No. 148-3 at 40:12-16. Therefore, the Court finds that these interruptions do not satisfy Plaintiff's burden of proving the third element of a *prima facie* case of discrimination.

Plaintiff also claims that Defendants Dittmann and Stewart "targeted" her and "intensely scrutinized" her performance, as evidenced by statements Mr. Frazier made. *See* Dkt. No. 155-16 at 22; *see also* Dkt. No. 159 at 12. "Generally, scrutiny of an employee's performance—particular[ly] where … the 'scrutiny' consisted solely of classroom observations of a type explicitly authorized by plaintiff's collective bargaining agreement—does not rise to the level of an adverse employment action." *Heaphy v. Webster Cent. Sch. Dist.*, 761 F. Supp. 2d 89, 92 (W.D.N.Y. 2011) (citation omitted). At her deposition, Plaintiff alleged that Defendant Stewart scrutinized her performance when she observed Plaintiff. *See* Dkt. No. 148-3 at 145:20-146:17. Plaintiff could not determine what Defendant Dittmann did to scrutinize her work. *See id.* at 146:24. Contrary to Plaintiff's argument, Defendant Stewart's one observation of Plaintiff does not rise to the level of an adverse employment action; and, therefore the Court finds that this does not satisfy Plaintiff's burden under the *McDonnell Douglas* test for her Title VII discrimination claim.

Finally, although Plaintiff does not address these allegations in her opposing memorandum, Defendants rebut Plaintiff's allegations that she was "mocked" about her vehicle and the race of her husband. *See* Dkt. No. 159 at 12. As Defendants correctly point out, Plaintiff could not identify a single instance of a Defendant "mocking" her for these reasons at her deposition. *See* Dkt. No. 148-3 at 147:22-148:12, 169:8-22. Plaintiff's only recollections of being "mocked" were comments about her car that Defendant District's maintenance man made, although she could not remember what he said, and general comments about her husband's race, although she could not remember who made them or what the comments were. *See id.* at 148:15-149:5, 149:24-150:4. Even taking these facts in the light most favorable to Plaintiff, district courts in this Circuit have held that "mockery by other staff members is not an adverse [employment] action." *Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05-CV-5109, 2007 U.S. Dist. LEXIS 28274, *31 (S.D.N.Y. Apr. 18, 2007). Thus, the Court finds that Plaintiff's claims that Defendants, and employees of Defendant District, mocked her do not amount to an adverse employment action sufficient to satisfy the third element of the *McDonnell Douglas* test.

Because Plaintiff has not asserted that she suffered an adverse employment action, she has failed to establish the third element required to make a *prima facie* case of discrimination for which Defendants Lowengard, Dittmann, and Stewart could be held individually liable under § 1983 or the HRL, or Defendant District could be held liable under Title VII. Thus, the Court grants Defendants' motion for summary judgment with respect to these claims.

### C. Plaintiff's hostile work environment claims

The Court must consider whether Defendants are entitled to summary judgment on Plaintiff's hostile work environment claims against Defendants Lowengard, Dittmann, and Stewart pursuant to 42 U.S.C. § 1983 and against Defendant District pursuant to Title VII. The Second Circuit, in its mandate, asked the Court to consider various facts when determining whether Plaintiff has adequately pled a hostile work environment claim. The Court has considered each of those facts, discussed in turn, and ultimately reaffirms its decision to grant Defendants' motion for summary judgment on these claims.

The standard for § 1983 and Title VII hostile work environment claims is the same. It requires the plaintiff to show that "'the workplace is permeated with discriminatory intimidation, ridicule, and insult … that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ronga v. New York City Dep't of Educ.*, No. 10 Civ. 03327 (LTS), 2011 U.S. Dist. LEXIS 36013, *12 (S.D.N.Y. Mar. 31, 2011) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation and quotation marks omitted)); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). Even a single incident that is extraordinarily severe, or a series of incidents that were continuous and concerted, may meet this standard if they altered the conditions of the plaintiff's work environment. *See Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 92 (N.D.N.Y. 2013) (quotation omitted). Ultimately, it is up to the courts to examine the totality of the circumstances to determine whether a workplace is hostile and thus creates an adverse employment action against the plaintiff. *See id.* (quotation omitted). The totality of the circumstances includes "'the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance.'" *Id.* (quotation omitted).

Furthermore, "[a]n individual may be held liable under … § 1983 only if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)) (other citations omitted).[10] If the defendant is a supervisor, then "'a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. Finally, as with individual liability, in the § 1983 context, a plaintiff must establish that a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic …'" *Littlejohn*, 795 F.3d at 314 (quoting *Raspardo* [*v. Carlone*], 770 F.3d [97,] 116 [(2d Cir. 2014)] (citation omitted)).

### 1. Defendant Dittmann

First, the Second Circuit asked the Court to consider alleged remarks, to which Plaintiff attested in her affirmation, that she was told that white teachers, including Defendant Dittmann himself, were intimidated by her because of her status as a "tall Black, well-spoken, educated, professional woman." *See* Dkt. No. 118 at 16; *see also* Dkt. No. 155-4 at ¶¶ 6,13. Defendant Dittmann denies ever agreeing to such a statement, ever making such a statement, or even making a similar statement. *See* Dkt. No. 148-13, Def. Dittmann Aff., at ¶ 16. The only person

---

[10] "Personal involvement can be established by showing that: '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference … by failing to act on information indicating that unconstitutional acts were occurring.'" *Littlejohn*, 795 F.3d at 314 (quoting *Back*, 365 F.3d at 127).

who recalls this "intimidation" remark is Plaintiff, but she recalled it differently in her deposition. Instead of being told the "intimidation" remark by Defendant Dittmann, Plaintiff testified: "I said to [Defendant Dittmann], you know: Clearly they have issues with me, because you know, I'm tall and I'm black and whatever, and he said: I agree. Even I'm intimidated by you." *See* Dkt. No. 148-3 at 42:21-24.

Even accepting Plaintiff's allegations as true, a reasonable factfinder could not find that this remark—which Plaintiff apparently made to Defendant Dittmann—is so threatening or severe that it would unreasonably interfere with Plaintiff's job performance. As Defendants point out, Plaintiff cannot rely on a remark *she* made to create a hostile work environment. *See* Dkt. No. 148-18 at 33. Further, Plaintiff did not present any other evidence that shows Defendant Dittmann directly created a hostile work environment or helped create one while in a supervisory position. Thus, for these reasons, the Court grants Defendants' motion for summary judgment on Plaintiff's § 1983 hostile work environment claim against Defendant Dittmann.

### *2. Defendant Stewart*

Plaintiff does not provide any evidence that Defendant Stewart directly acted in a way that created a hostile work environment. There are no allegations that Defendant Stewart interfered with her classroom, made racial comments to her, or in any other way created an abusive workplace. Although Plaintiff alleges that Defendant Stewart conducted a "sham" evaluation of her, Plaintiff does not argue that that evaluation contributed to the hostile work environment. Because Plaintiff has failed to provide even a scintilla of evidence that Defendant Stewart created a hostile work environment, the Court grants Defendants' motion for summary judgment on Plaintiff's § 1983 hostile work environment claim against Defendant Stewart.

### 3. *Defendant Lowengard*

Similarly, Plaintiff does not point to evidence that Defendant Lowengard directly discriminated against her or acted in a way that directly caused a hostile work environment. There is also no evidence that Defendant Lowengard was responsible for creating a hostile work environment in his position as a supervisor. There is only evidence that he knew of one complaint Plaintiff had made about discrimination. At Defendant Lowengard's deposition, he recalled that Plaintiff had made a remark about a "lynch mob."[11] *See* Dkt. No. 155-11, Def. Lowengard's Deposition, at 11:13-18. Mr. Lowengard testified, however, that he felt the "lynch mob" situation had been resolved when Plaintiff met with Defendant Dittmann, the head of the teacher's union, and possibly Ann Sanzone, Assistant Director of Personnel at the school. *See id.* He did not even recall discussing that issue with Plaintiff when he met with her at a later date.[12] *See id.* at 15:11-19.

There is also no evidence that Defendant Lowengard received any other reports of discrimination, that he knew about the allegedly racist comments made by various staff members at Tech, or that he created a policy or practice that permitted racial discrimination within Defendant District. Thus, because Plaintiff does not point to any evidence that

---

[11] In Plaintiff's exhibit, she provides a letter to Mr. Dittmann dated December 19, 2007, where she stated, "Mr. Dittman, the modern day lynch mob must stop. I was okay when it was just me, but it is affecting the academic success of my students and, therefore must end. In a great effort to harass, badger and disrespect me, several staff members are violating the educational rights of my students. I am asking you to put an end to this for sake of the students." *See* Dkt. No. 155, Ex. 1.

[12] That meeting was not about alleged discrimination, but about Plaintiff's general dissatisfaction with Tech, the number of failing students in her classroom, and Defendant Lowengard's concerns that Plaintiff was not a "team player" because she was not attending team meetings. *See* Dkt. No. 155-11 at 12-16.

Defendant Lowengard directly created the hostile work environment, or that his failure to supervise caused such an environment, the Court grants Defendants' motion for summary judgment and dismiss Plaintiff's § 1983 hostile work environment claim against Defendant Lowengard.

### 4. *Defendant District*

As stated above, the Court must look at the totality of the circumstances to determine whether Defendant District should be held liable for creating a hostile work environment in violation of Title VII. The Second Circuit asked the Court to look at various facts with respect to this claim.

In addition to the "intimidation" mark that Defendant Dittmann allegedly made, the Second Circuit asked the Court to consider Mr. Frazier's alleged statement to Plaintiff that he was initially meant to perform her evaluation and that "they" were "doing this" to her because she was "a well[-]educated Black woman." *See* Dkt. No. 118 at 16; *see also* Dkt. No. 155-5 at ¶ 12; Dkt. No. 155-4, Pl's Aff., at ¶ 30. Mr. Frazier does not recall ever making the alleged statements to Plaintiff. *See* Dkt. No. 148-14, Frazier Aff., at ¶¶ 6-7; *see also* Dkt. No. 155-14, Frazier's Deposition, at 62:15-22. In fact, Mr. Frazier does not recall making any statements to Plaintiff or having any discussions with her at any time regarding race or race discrimination. *See* Dkt. No. 155-14 at 61:23-62:18. Not only does Mr. Frazier fail to recall this conversation; but, at her deposition, Plaintiff also failed to recall any of Mr. Frazier's alleged statements to her about her race or gender. *See* Dkt. No. 148-3 at 42:10-18. Considering no one even remembers this conversation, a reasonable factfinder could not find that it contributed to a hostile work environment.

The Second Circuit also instructed the Court to consider the following three instances when teachers made purportedly racist remarks to Plaintiff: (1) Ms. Dygert allegedly stated, "Where I went to school in the Adirondacks there were no Blacks," (2) Mr. Paraino began to tell Plaintiff a racist joke and stopped only upon seeing that she disapproved, and (3) Mr. Resti made a comment to Plaintiff about African-American students fighting with one another being "cultural." *See* Dkt. No. 118 at 16-17 (citing Dkt. No. 155-4 at ¶ 23). Each of these remarks appear to be minor, isolated incidents. None of them, even taken together, rise to the level of severity and pervasiveness that a reasonable person would feel that she was working in a hostile environment.

Furthermore, there is no evidence that Plaintiff complained about any of these remarks to her supervisors. Because Plaintiff's supervisors did not have notice of these alleged comments, there is no way that Defendant District would have notice of them and the alleged hostile work environment they were creating. *See generally* Dkt. No. 155-5 at ¶ 10, Dkt. No. 155-4 at ¶¶ 10, 23. Additionally, Plaintiff does not even indicate what Defendant District could do to discipline Mr. Resti for the alleged remark about "cultural" fighting, which he made off school property when he and Plaintiff ran into each other in a doctor's office. *See* Dkt. No. 155-4 at ¶ 23.

The Second Circuit also asked the Court to consider that Plaintiff allegedly complained of discriminatory treatment to the School District's Director of Personnel, Randy Williams, who allegedly responded that she should "dig [her] heels in." *See* Dkt. No. 118 at 17 (citing Dkt. No. 155-4 at ¶ 25). This remark, like the others, does not change the fact that a reasonable factfinder could not conclude that Plaintiff was working in a hostile environment. Plaintiff does not even recall the conversation with Mr. Williams, what she complained to him about besides

feeling that she was being "lynched academically," or when she complained to him.  *See* Dkt.
No. 148-3 at 83:4-84:20.

Based on these facts, no reasonable factfinder – even looking at the allegations in the light
most favorable to Plaintiff – could find that Plaintiff suffered a hostile work environment.
Therefore, in addition to granting Defendants' motion for summary judgment on Plaintiff's
§ 1983 hostile work environment claim against Defendants Dittmann, Stewart, and Lowengard,
the Court grants Defendants' motion for summary judgment on Plaintiff's Title VII hostile work
environment claim against Defendant District.

### D.  Plaintiff's § 1983 municipal liability claim against Defendant District

"Municipal entities, including school districts, are 'persons' within the meaning of § 1983
and therefore subject to suit under that provision." *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir.
2011) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 663, 98 S. Ct.
2018, 65 L. Ed. 2d 611 (1978); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d
107, 128 (2d Cir. 2004)). However, municipal entities "may not be sued under § 1983 for an
injury inflicted solely by its employees or agents."  *Monell v. Dep't of Soc. Servs.*, 436 U.S.
658, 694 (1978).  They may be sued only when a government's policy or custom, made by
policymakers or officials, inflicts injury.  *See id.*  The *Monell* court further ruled "that Congress
did not intend municipalities to be held liable unless action pursuant to official municipal policy
of some nature caused a constitutional tort."  *Id.* at 691.

In other words, a municipal entity like a school district cannot be held liable under
§ 1983 unless one of the officials or policymakers violated the Constitution.  Defendant
Lowengard, as Superintendent, is the only individual Defendant who is a policymaking official
within Defendant District. Because the Court granted Defendants' motion for summary

judgment with respect to Plaintiff's § 1983 claims against Defendant Lowengard, Defendant Lowengard has not committed a constitutional violation; and, therefore, Defendant District cannot be subject to municipal liability under § 1983.

The Second Circuit suggested that the Court consider Mr. Triana's and Mr. Moore's affidavits in determining whether Defendant District had a policy or practice of discrimination. *See* Dkt. No. 118 at 18. Even considering Mr. Triana's and Mr. Moore's affidavits, however, there are no issues of triable fact regarding Defendant District's alleged custom, policy or practice of discriminating against African-Americans. The incidents reported in their affidavits appear to be isolated, with no temporal proximity to Plaintiff's claims, and they occurred in buildings other than Tech, involving different teachers and administrators from those whom Plaintiff alleges discriminated against her. *See* Dkt. Nos. 155-7, Aff. of Triana, 155-8, Aff. of Moore. Therefore, for the above-stated reasons, the Court grants Defendants' motion for summary judgment on this issue.

### E. Plaintiff's Title VII retaliation claim against Defendant District

In 2012, the Court dismissed Plaintiff's Title VII retaliation claim against Defendant District. The Second Circuit vacated this opinion, concluding that Plaintiff plausibly alleged facts sufficient to state a claim for retaliation under Title VII. The Second Circuit found that the facts in Plaintiff's proposed amended complaint alleged a claim of retaliation under Title VII because Plaintiff filed a complaint of discrimination with the NYSDHR; and, following that complaint, she made a request to Defendant District (through her treating psychiatrist) that she be relocated to another school, which was denied.[13] *See* Dkt. No. 118 at 10. The Second

---

[13] Although the Second Circuit claimed that Plaintiff's protected activity was filing a claim with the NYSDHR, and Defendants argued there was no temporal proximity to the transfer denials,

Circuit relied on Plaintiff's statement that such a transfer could have been done without difficulty, and it would have been done had Plaintiff not complained of discrimination, because a faculty member's request for transfer was typically honored. *See id.*; *see also* Dkt. No. 155-16 at 27. The Court must now analyze this claim against Defendant District in response to its motion for summary judgment.

Title VII of the Civil Rights Act of 1964 includes an anti-retaliation provision, making it unlawful "for an employer to discriminate against any of his employees" because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]." *See* 42 U.S.C. § 2000e-3(a). "This anti-retaliation provision is intended to further the goals of the anti-discrimination provision 'by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees.'" *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting [*Burlington Northern & Santa Fe Ry. v.*] *White*, 548 U.S. [53,] 63, 126 S. Ct. 2405 [(2006)]).

Courts evaluate Title VII retaliation claims under the three-step burden-shifting analysis set out in *McDonnell Douglas*. *See id.* "First, the plaintiff must establish a *prima facie* case of retaliation by showing: '"(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."'" *Id.* (quoting *Jute* [*v. Hamilton Sundstrand Corp.*,] 420 F.3d [166], 173 [(2d Cir. 2005)]). The plaintiff's burden in proving a *prima facie* case is "de minimus." *Id.* It is "'the court's role in evaluating a summary judgment

---

Plaintiff correctly notes that filing her complaint in the instant action also constituted a protected activity. *See* Dkt. No. 148-18 at 26; Dkt. No. 155-16 at 27.

request to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.'" *Id.* (quotation omitted).

"If the plaintiff sustains this initial burden, 'a presumption of retaliation arises,'" and the burden shifts to the defendant. *Id.* (quotation omitted). Once the burden shifts to the defendant, it must then "'articulate a legitimate, non-retaliatory reason for the adverse employment action.'" *Id.* (1uotation omitted). If the defendant can do this, then the "'presumption of retaliation dissipates'" and the burden shifts back to the employee to show that the retaliation "'was a substantial reason for the adverse employment action.'" *Id.* (quotation omitted). "A plaintiff can sustain this burden by proving that 'a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[.]'" *Id.* (quotation omitted). Title VII is violated "'if the employer was motivated by retaliatory animus,'" "'even if there were objectively valid grounds for the [adverse employment action].'" *Id.* at 164-65 (1uotation omitted).

Thus, to establish a *prima facie* case under this framework, Plaintiff must first show that she participated in a protected activity. Title VII clearly states which activities are protected: making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing under the statute. *See* 42 U.S.C. § 2000e-3(a). It is not disputed that Plaintiff engaged in two different forms of protected activity; she filed a complaint against Defendant District with the New York State Division of Human Rights ("NYSDHR") (which was also filed with the Equal Employment Opportunity Commission ("EEOC")), and she filed a complaint to initiate this action in federal court. *See* Dkt. No. 148-10, Ex. G; *see also* Dkt No. 1 at ¶ 6. Thus, the Court finds that Plaintiff has satisfied the first element of her *prima facie* case.

Second, Plaintiff must show that Defendants knew of her protected activity. In Defendant Stewart's affidavit, she noted that "on or about April 27, 2009, Plaintiff filed an administrative complaint of discrimination" with the NYSDHR and that complaint was dual filed with the EEOC. *See* Dkt. No. 148-10 at ¶ 18. Plaintiff also attested that Defendant District was served with a copy of her NYSDHR complaint on or about April 27, 2009. *See* Dkt. No. 155-4 at ¶ 37. Defendant District obviously knew of Plaintiff's protected activity of filing her initial complaint in this action, brought under Title VII of the Civil Rights Act of 1964, because Plaintiff served all Defendants with a summons, and Defendants' counsel subsequently answered the complaint. *See* Dkt. No. 2, Summons; Dkt. No. 4, Defs' Answer. Therefore, the Court finds that Plaintiff has satisfied the second element of her *prima facie* case.

The third element of a *prima facie* retaliation case that Plaintiff must prove is that she suffered an adverse employment action. An adverse employment action in a Title VII retaliation claim is different from one in a Title VII or § 1983 discrimination claim. The Supreme Court has ruled that Title VII's "antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) (citation omitted); *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019). Instead, a plaintiff may recover for retaliation by showing "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination.'"" *White*, 548 U.S. at 68 (quotation omitted). The Supreme Court has remarked that, in Title VII cases, "[d]iscrete acts such as termination, failure to promote, *denial of*

*transfer*, or refusal to hire" are easily identifiable retaliatory adverse employment decisions. *Morgan*, 536 U.S. at 114 (emphasis added).

There is no issue of fact regarding Plaintiff's transfer denial. The parties agree that Plaintiff's psychiatrist wrote two notes regarding her ability to return to work. In the first note, dated August 24, 2010, Dr. Saundra Barnett-Reyes wrote that Plaintiff was immediately able to return to work full time and that Plaintiff "would be much more effective on Special Assignments helping teachers and students outside the classroom setting within the Syracuse City Schools." *See* Dkt. No. 155-2 Ex. 8. In the second note, dated September 1, 2010, Dr. Barnett-Reyes stated that Plaintiff "is able to return to work full time without restriction, however, it is my professional medical opinion that she not return to [Tech]." *See* Dkt. No. 155-2 Ex. 9.

The parties do not dispute that Article 10, Section H of the District-Syracuse Teachers Association labor contract establishes a procedure for teachers to request a transfer to another school building. *See* Dkt. No. 148-18 at 25; *see also* Dkt. No. 148-11 at ¶¶ 11-12. The procedure in the labor contract requires a teacher to fill out a specific form to request a transfer and to provide reasons for the request. *See* Dkt. No. 148-18 at 25. In fact, the parties agree that Plaintiff did not comply with this transfer procedure. *See id.*; *see also* Dkt. No. 155-16 at 28. Plaintiff argues, however, that, although she did not follow this procedure, she requested a transfer by submitting her psychiatrist's notes; and that transfer was denied. *See* Dkt. No. 47 at ¶ 42.

As explained above, the Supreme Court has held that denying an employee a transfer *can* be an adverse employment action for purposes of a retaliation claim. *See Morgan*, 536 U.S. at 114. However, a plaintiff must have actually been denied the transfer for it to constitute

- 28 -

retaliation. Here, the District-STA labor contract clearly sets forth the procedure for requesting a transfer. Plaintiff did not comply with that procedure; and, instead, her psychiatrist sent two notes to Defendant District stating that Plaintiff would be "more effective" in another position or building. Plaintiff's psychiatrist's notes were not considered a transfer request because they did not comply with the formal policy – the *only* way to request a transfer. Thus, because Plaintiff did not officially request a transfer, she could not have been denied a transfer. Further, if she was not denied a transfer, then the Court cannot find that Defendant District retaliated against Plaintiff in this way. The Court thus holds that Plaintiff has not satisfied her burden on this element of her *prima facie* case and grants Defendants' motion for summary judgment with regard to her Title VII claim.[14]

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that, upon reconsideration as the Second Circuit required, Plaintiff's HRL claim against Defendants District and Lowengard is **DISMISSED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment with regard to Plaintiff's Title VII claims, *see* Dkt. No. 148, is **GRANTED**; and the Court further

**ORDERS** that, upon reconsideration at the Second Circuit's request, Defendants' motion for summary judgment with regard to Plaintiff's remaining claims, *see* Dkt. No. 148, is **GRANTED**; and the Court further

---

[14] Insofar as Plaintiff requests that the Court allow further discovery relating to her retaliation claim, *see* Dkt. No. 155, Aff. of Pl's Counsel, A.J. Bosman, at ¶ 31, the Court denies this request.

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: February 3, 2020
　　　　Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge